Commonwealth of Pennsylvania, Auditor General of Pennsylvania *v.* Borough of East Washington, Appellant.

Argued December 2, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Clarence Crumrine,* with him *James C. McCreight,* and *McCreight, Marriner & McCreight,* for appellant.

*Frank A. Woelfling,* Deputy Counsel, with him *Frank P. Lawley, Jr.,* Chief Counsel, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 18, 1976:

This is before us on the Auditor General's Motion to Quash the Exceptions filed by the Borough of East Washington (Borough). Borough's exceptions were directed against a purported adjudication of the Auditor General. Briefly, the facts are as follows: The Auditor General conducted an audit of Borough's Police Pension Fund. The audit disclosed certain alleged improper expenditures by Borough. Based upon those findings, the Auditor General recommended that the Commonwealth withhold future disbursements of casualty insurance premium tax allocations to Borough.

The issue is whether the audit report is an "adjudication" under the Administrative Agency Law[1] (Act). "Adjudication" is defined in Section 2[2] of the Act, 71 P.S. §1710.2 (a) as:

"[A]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made. . . ."

Under Section 2 of the Act of June 28, 1895, P.L. 408, *as amended,* 72 P.S. §2262, the State Treasurer is required to pay to the treasurers of the municipalities in the Commonwealth the premium tax paid to the Commonwealth by foreign fire insurance companies doing business within the municipalities. The municipalities, in turn, must apply the money to the relief or pension funds of the local fire department. Section 1 of the Act of May 12, 1943, P.L. 259, *as amended,* 72 P.S. §2263.1, outlines a similar arrangement whereby the tax on premiums of foreign casualty insurance companies are turned over to municipalities for payment into the police pension funds.

---

1. Act of June 4, 1945 P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq.

2. As amended by Act of July 31, 1963, P.L. 425.

Section 403 of the Fiscal Code[3] provides:

"The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.

"If at any time the department shall find that any money received by any person, association, corporation or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury."

All other things being equal, Borough was entitled to receive its proportionate share of the Commonwealth's tax on casualty insurance premiums. Based upon his determination that the funds were misappropriated, the Auditor General, pursuant to the mandate of Section 403 of the Fiscal Code, declined to approve any further payments of these tax revenues by the State Treasurer to Borough. The action of the Auditor General was final, affected Borough's property rights, and was, therefore, an "adjudication" within Section 2 of the Act.

However, in order for an appeal from this adjudica-

---

3. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §403.

tion to proceed on the merits, this Court must have the benefit of a complete record of the proceedings below, including the Auditor General's report.

Accordingly, we

ORDER

AND NOW, this 18th day of February, 1976, the Motion to Quash is denied with a direction that a complete record of the administrative proceedings below be presented to this Court prior to further consideration of the merits of the exceptions filed by the Borough of East Washington.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent for two reasons.

First: I am not satisfied that the Auditor General made an adjudication in this case. The majority states the issue to be whether the *audit report* was an adjudication, but it appears to me that it answers that question by an analysis of the Auditor General's *refusal to approve the payment* to the Borough of East Washington (Borough) of its share of the Commonwealth's tax on casualty insurance premiums. It seems to me that the Borough's remedy relative to the non-payment of this money was mandamus rather than an appeal from the audit, which I do not consider to have been an adjudication.

Second: Assuming that the audit was an adjudication, then I must conclude that it was made without a hearing and the opportunity of the Borough to present evidence. It was held in *Conestoga National Bank of Lancaster v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971) that procedural safeguards, such as notice and a hearing, should accompany a situation where the administrative action is adjudicatory in nature and involves substantial property rights.

I would grant the Auditor General's Motion to Quash.

Judge KRAMER joins in this dissent.