Township of South Fayette, Petitioner *v.* Commonwealth of Pennsylvania, Robert Bloom, The Secretary of Revenue et al., Respondents.

496

Argued February 1, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*Timothy P. O'Reilly, McArdle Caroselli, Spagnolli & Beachler,* for petitioner.

*Michael L. Harvey,* Deputy Attorney General, with him, *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman,* Attorney General, for respondents, Robert Bloom, Secretary of Revenue and Michael L. Browne, Insurance Commissioner.

*Vincent X. Yakowicz,* with him, *R. Budd Dwyer,* for State Treasurer, R. Budd Dwyer.

*Charles D. Shields, Jr.,* Deputy Counsel, with him, *Lenora M. Smith,* Chief Counsel, for Al Benedict, Auditor General of the Commonwealth of Pennsylvania.

OPINION BY JUDGE CRAIG, April 19, 1983:

In this original jurisdiction matter, these preliminary objections now before us challenge the Township of South Fayette's petition for review in the nature of a complaint in mandamus, which seeks an order to require the Secretary of Revenue, the Insurance Commissioner, the Auditor General and the State Trea-

surer to take all actions necessary to require foreign fire insurance companies to report accurately the location, by municipalities, of all foreign fire insurance applications as required by section 2 of the Act of June 28, 1895, P.L. 408, *as amended*, 72 P.S. §2262 (section 2262). That section provides that the Commonwealth must pay annually to the treasurers of its municipalities the entire proceeds of the 2% tax paid upon premiums by foreign fire insurance companies, and requires each recipient municipality to pay the amount it receives to the relief fund association or pension fund covering the fire companies in the municipality.[1]

---

[1] Section 2262 provides, in relevant part:

§2262. Payment of amount by State Treasurer to municipalities; apportionment

(a) On and after the first day of January, one thousand nine hundred and nineteen, and annually thereafter, there shall be paid by the State Treasurer to the treasurers of the several cities, towns, townships, and boroughs within the Commonwealth, the entire net amount received from the two per centum tax paid upon premiums by foreign fire insurance companies. The amount to be paid to each of the treasurers of the several cities, towns, townships, and boroughs shall be based upon the return of said two per centum tax upon premiums received from foreign fire insurance companies doing business within the said cities, towns, townships, and boroughs, and shall be proportionate to the premiums received by such companies on account of insurance written upon property located in such city, borough, town or township, as shown by the report made to the Department of Revenue. Each city, borough, town or township, receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department, or of such fire company, or fire companies, paid or volunteer, now existing, or hereafter organized, in such city, borough, town or township, and duly recognized as such by the council or commissioners or supervisors, as the case may be, of such city, borough, town, or township. In any borough, town or township in which there is no fire department or fire company or companies, the amount received by

Specifically, the township alleges that it has not been receiving its proportionate share of this tax, known as the foreign fire insurance premiums tax, because the named state officials have not prevented the foreign fire insurance companies from allowing its insurance recipients to designate the post office area name on their applications as the recipient municipality, rather than the municipality where the insured property actually is located. Because the delineation of post office areas does not match actual municipal boundaries, the township alleges that it has received less than its proportionate share of the tax. Thus,

---

the treasurer of the borough, town or township from said tax shall be forthwith paid to the relief fund association, or pension fund of the fire department or fire company or companies of any near or adjacent city, borough, town or township, the fire department or fire company or companies of which afford fire protection to the inhabitants of such borough, town, or township. Before payment of said tax to the treasurer of any such borough, town, or township, the mayor, in boroughs, and the secretary of the board of supervisors, in towns, or townships, shall first certify to the Auditor General that the fire department or fire company or companies of such near or adjacent city, borough, town, or township afford fire protection to the inhabitants of such borough, town or township: Provided, That if the fire department consists of paid and volunteer firemen and the paid firemen shall be covered by a pension fund, then the two per centum tax aforesaid shall be divided equally between the relief fund association of the volunteer firemen and the pension fund for the paid firemen. Warrants for the above purposes shall be drawn by the Auditor General, payable to the treasurers of the several cities, towns, townships, and boroughs, in accordance with this act, whenever there are sufficient funds in the State Treasury to pay the same. All such fire insurance companies shall instruct their agents to place conspicuously upon the said policies and in the applications for said policies, if any, the exact name of the city, borough, town or township wherein the insured property is located in addition to the mailing address for said insured property.

as relief, the township seeks a mandamus order to compel state officials to insure compliance with section 2262, and, in addition, it has requested an impoundment of all foreign fire insurance premiums on funds to be paid to the municipalities abutting the township, until the reporting insurance companies make an accurate and complete report as required by section 2262.

In response, the state officials have filed preliminary objections, alleging that: (1) the township lacks standing, (2) the township has failed to join indispensable parties, and (3) the township has failed to state a cause of action as to each official. We will consider each of the objections under separate headings.

### Standing

In first addressing the standing objection, we note that our Supreme Court, in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), held that standing requires an aggrieved party showing a substantial, direct and immediate interest in the subject matter of the litigation. The requirement of a "substantial interest" simply means that there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. The requirement of a "direct interest" means that the person claiming to be aggrieved must show causation of harm to his interest by the matter of which he complains. The nature of the connection between the injury complained of and the injury to the person challenging it is the concern of the "immediate interest" element. 464 Pa. at 195, 346 A.2d at 282.

The state officials contend that the language of section 2262(a), which provides that each municipality

"shall forthwith pay the amount received to the relief fund association of or the pension fund covering the employees of the fire department . . ." indicates that the municipality has no discretion in withholding the funds and is thus merely a conduit for the funds. Furthermore, the officials assert that the firemen's associations are the real aggrieved parties and that the township, in attempting to represent the fiduciary interest of its residents, has no standing.

However, unlike the *Township of Upper Moreland v. Department of Transportation,* 48 Pa. Commonwealth Ct. 27, 409 A.2d 118 (1979); *Borough of Valley-Hi Incorporation Case,* 33 Pa. Commonwealth Ct. 180, 381 A.2d 204 (1977), and *Snelling v. Department of Transportation,* 27 Pa. Commonwealth Ct. 276, 366 A.2d 1298 (1976), upon which the state officials rely, the township here is not generally representing itself as the fiduciary of the public interest with no express or implied mandate to do so. Rather, the township has specific statutorily prescribed responsibilities to offer fire protection to its residents. *See, e.g.,* section 1502 of the First Class Township Code.[2]

Given this statutorily prescribed responsibility, the township's interest in fire protection resembles the environmental interest of a second class township, discussed recently in *Franklin Township and County of Fayette v. Department of Environmental Resources*

---

[2] Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §56516 and §56517, which grants a township of the first class the power:

To make regulations within the township or within such limits, as may be deemed proper, relative to the cause and management of fires and the prevention thereof; to purchase or contribute to the purchase of fire engines and fire apparatus for the use of the township, and to appropriate money to fire companies for the operation and the maintenance thereof and for the construction, repair and maintenance of fire company houses; to ordain rules and regulations for the government of such fire companies and their

*and Elwin Farms, Inc.,* Pa. , 452 A.2d 718 (1982), where our Supreme Court concluded that the provisions of the Second Class Township Code, which charged Franklin Township with a variety of duties dealing with the regulation of garbage and refuse and with the duty to promote public health, safety, morals and general welfare of the township, were sufficient statutory powers and duties to confer standing upon them to challenge the Department of Environmental Resources' issuance of a permit for solid waste disposal to Elwin Farms.

Furthermore, in the situation before us, the legislature expressly recognized the municipality's role in distributing the foreign fire insurance premium tax by providing in section 2262(a), that before a municipality shall receive this tax from the State Treasurer, the municipality ''shall first certify to the Auditor General that the fire department or fire company or companies of such near or adjacent [municipality] afford fire protection to the inhabitants of [that municipality]. . . .'' Our Superior Court recognized that involvement of a municipality in applying the proceeds of this tax:

> The manner in which the fund was to be set up or administered was left by the legislature to the municipalities.

*Commonwealth v. Souder,* 172 Pa. Superior Ct. 463, 470, 94 A.2d 136, 139 (1953), *aff'd* 376 Pa. 78, 101 A.2d 693 (1954).

---

officers, to regulate the method to be followed in the extinguishment of fires.

53 P.S. §56516.

To provide and maintain suitable places for the housing of engines, hose carts, and other apparatus for the extinguishment of fire . . . .

53 P.S. §56517.

Therefore, the township, given its active role in developing fire protection by, among other means, designating the recipients of this tax, has standing to bring this action.[3]

### Indispensable Parties

The township alleges that the post offices serving it and its neighboring municipalities[4] do not reflect the actual boundaries of the municipalities, and requests that this court impound all insurance funds paid to those municipalities until the named state officials resolve the discrepancy, which the township asserts is resulting in the loss of its fair share of the tax revenues.

In response, the state officials contend that the municipalities surrounding the township's borders are indispensable parties, and that the township's failure to join them constrains us to dismiss the complaint, citing *Columbia Gas and Transmission Co. v. Diamond Fuel Co.*, 464 Pa. 377, 346 A.2d 788 (1975) (failure to join indispensable parties deprives a court of jurisdiction).

Recently, our Supreme Court, in *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953 (1981), noted that:

The determination of an indispensable party question involves at least these considerations:

(1) Do absent parties have a right or interest related to the claims?

---

[3] *Cf. Pennsylvania Auditor General v. East Washington Borough*, 23 Pa. Commonwealth Ct. 382, 351 A.2d 687 (1976) (borough, which was the only appellant to challenge Auditor General, was entitled to receive proportionate share of the Commonwealth's tax and casualty insurance premiums under a similar insurance statute).

[4] Boroughs of Bridgeville, McDonald, Oakdale and the Township of Cecil.

(2) If so, what is the nature of that right or interest?

(3) Is that right or interest essential to the merits of the issue?

(4) Can justice be afforded without violating the due process rights of absent parties?

*Id.* at 481, 431 A.2d at 956.

*Mechanicsburg* involved preliminary objections by various state officials to a school district's complaint in equity, which sought to compel those officials to calculate the income valuation of that district in accordance with state funding statutes. At issue was whether all the other school districts of this Commonwealth were indispensable parties to the action. The court said:

The other school districts had a right under [the Act] to a correct and accurate determination of the amount of subsidy granted them. This right is the same as that of [appellant school district]. It is not one of entitlement to a determined portion of the total subsidy, but rather to a sum *to be determined* by correct computations of the Secretary of Education in accordance with the state school subsidy formula. . . .

*Id.* at 482, 431 A.2d at 956. Noting that each school district had "a vested right to receive the benefit of the use of correct process by the state officials identified in the Code [and] not a vested right to receive a fixed or determined sum of money. . . ." *Id.* at 482, 431 A.2d at 957, the court held that the other school districts were not "essential" to the determination of the issue of ascertaining the correct computation.

The school district subsidy formulas at issue in *Mechanicsburg* required complex calculations of nu-

merous factors in which the school districts were often measured against each other.[5] In contrast, the calculations of the foreign fire insurance tax simply involves a determination of the municipality in which each insurance applicant resides. Because the competing concerns of other school districts did not require their categorization as indispensable parties in *Mechanicsburg,* the more simple computation involved here, requiring no weighing of statewide averages, compels us to conclude that other municipalities are not indispensable parties.

Moreover, the school district's complaint in *Mechanicsburg* sought to enjoin the state officials from paying the final installment of school subsidies for the school year in question. The potential reimbursement delay to the other Commonwealth school districts did not establish those districts as indispensable parties. Likewise, the township's request here to impound distribution of the tax receipts until a policy is established to ensure compliance with section 2262, should not establish the neighboring municipalities as indispensable parties, notwithstanding the distinction that the township named only its neighboring municipalities, rather than all municipalities in the state.

Therefore, we conclude that the township did not fail to join indispensable parties.[6]

---

[5] See sections 2501-2592 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§25-2501-25-2592.

[6] The cases concerning the issue of indispensable parties, cited in the state officials' briefs are contained in the *Mechanicsburg* decision. *See, e.g., Action Coalition of Elders v. Allegheny,* 493 Pa. 302, 426 A.2d 560 (1981). *Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 387 A.2d 1301 (1978) ; *Columbia Gas Transmission Corp. v. Diamond Fuel Co.,* 464 Pa. 377, 346 A.2d 788 (1975) ; *Tigue v. Basalyga,* 451 Pa. 436, 304 A.2d 119 (1973) ; *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A.2d 894

*Demurrer*

The township seeks a mandamus order requiring each of the named state officials to take the necessary action to force foreign fire insurance companies to state correctly the municipality in which the insured property is located.[7]

The state officials assert that the township has failed to state a claim upon which relief can be granted, because none of the officials has a mandatory duty to enforce the reporting requirements of the foreign fire insurance premium tax, and, therefore, that we cannot issue a writ of mandamus. Mandamus can compel the performance of a ministerial act or mandatory duty only "where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Valley Forge Racing Association, Inc. v. State Horse Racing Commission,* 449 Pa. 292, 295, 297 A.2d 823, 825 (1972).

Specifically, as to each official, the township addresses the following statutory responsibilities: The

---

(1959) ; *Powell v. Shepard,* 381 Pa. 405, 113 A.2d 261 (1955) ; *Hartley v. Langkemp and Elder,* 243 Pa. 550, 90 A. 402 (1914)

Furthermore, *Oas v. Commonwealth,* 8 Pa. Commonwealth Ct. 118, 301 A.2d 93 (1973), is distinguishable. There, we held that the two school districts were indispensable parties where the complaint alleged that those districts were receiving funds, in addition to funds received by other districts, by virtue of illegal special legislation. Here we are not facing a constitutional challenge to a statute, which establishes the basis for the revenue.

[7] Preliminary objections in the nature of a demurrer admit all well-pleaded facts in the pleading attacked as well as all reasonable inferences deducible therefrom and cannot be sustained unless it is clear on the face of the pleading that the law will not permit the recovery sought, resolving all doubts in favor of overruling the demurrer. *Association of Pennsylvania State Colleges and University Faculties v. Commonwealth,* 44 Pa. Commonwealth Ct. 193, 403 A.2d 1031 (1979).

Insurance Commission, under sections 506 and 507 of the Insurance Company Law,[8] has the responsibility of requiring insurance companies to report correctly the location of the insured property.

Section 506 of the Company Law sets forth the requirements of fire insurance policies. Subsection (8) of that section states:

> In addition to the other provisions of this section, no foreign fire insurance company *shall* issue a policy affording fire insurance, as described in this section, on property in this Commonwealth, unless such policy contains the exact name of the [municipality] wherein the insured property is located in addition to the mailing address for each such insured property. (Emphasis added.)

Section 507 of that Law, 40 P.S. §637, grants the Insurance Commissioner the authority to enforce the provisions of section 506:

> Upon satisfactory evidence that any person, corporation, or insurance company, association or exchange is issued, or caused to be issued, any policy or contract of fire insurance on property situated in this Commonwealth contrary to the provisions of section 506 of this Act [40 P.S. §636], the Insurance Commissioner *may, in his discretion,* take, against the offending party, any one or more of the following courses of action: (1) Suspend or revoke the license of such offending person, corporation or insurance company, association or exchange; (2) refuse, for a period of not to exceed one year thereafter, to issue a new license

---

[8] Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§636 and 637.

to such offending person, corporation or insurance company, association or exchange; (3) impose a penalty of not more than $1,000 for each violation of said section. (Emphasis added.)

The Insurance Commissioner asserts that he may enforce only the requirements pertaining to insurance policies, and that he has no authority to enforce tax reporting requirements of insurance companies. Moreover, he contends that his authority to enforce section 506 is explicitly discretionary, which precludes the use of mandamus to compel such enforcement. *See Pennsylvania Tavern Association v. Liquor Control Board,* 472 Pa. 567, 372 A.2d 1187 (1977).

In addition, the township asserts that the Secretary of Revenue, under section 2262, has the responsibility of collecting and distributing taxes of foreign fire insurance companies. Section 2262 provides, in relevant part:

The amount to be paid to each of the treasurers of the several [municipalities] shall be based upon the return of said two percentum tax upon premiums received from foreign fire insurance companies doing business within the said [municipality], and shall be proportionate to the premiums received by such companies on account of insurance written upon property located in such [municipality], *as shown by the report made in the Department of Revenue.* (Emphasis added.)

The Secretary of Revenue contends that, although he is authorized to enforce reporting requirements of foreign fire insurance companies, he is under no mandatory duty to eliminate every reporting violation.[9]

---

[9] General provisions pertaining to the insurance premiums tax are set forth in article IX of the Tax Reform Code of 1972 (Tax

Contending that he is limited by resources in conducting investigations, the Secretary of Revenue asserts that *Mellinger v. Kuhn*, 388 Pa. 83, 130 A.2d 154 (1957) (because enforcement of the parking lots was discretionary, an action in mandamus could not be maintained to prosecute a street vendor for parking violations), is controlling.

Finally, the township has joined as defendants the Auditor General, who participates in the issuance of funds to municipalities under section 2262, and the State Treasurer, who issues checks for payment of the taxes levied.

In response, the Auditor General asserts that under the Insurance Act, the Insurance Commissioner, not the Auditor General has discretion to take action against any insurance company for issuing any policy or contract of fire insurance which is contrary to the provisions of section 507 of that Act.[10] Also, under section 2262, the Department of Revenue not the Auditor General must submit reports concerning dis-

---

Code), Act of March 4, 1971, P.L. 6, §§901-906, *as amended*, 72 P.S. 7901-7906. Section 904 of the Tax Code, 72 P.S. §7904, incorporates the enforcement provisions applicable to the corporate net income tax, sections 403-412 of the Tax Code, 72 P.S. §7403-7412. These incorporated sections provide two penalties for failure to make a report as required. First, section 403(d) of the Tax Code, 72 P.S. §7403, states that the Department of Revenue *may* add tax due on returns where officers of the corporation "neglect or refuse to make any report as herein required." Furthermore, section 401(c) of the Tax Code, 72 P.S. §7410(c), provides for fine and imprisonment where individuals "willfully" neglect to make a report as prescribed. The Tax Code authorizes the Department of Revenue to enforce these provisions. Also, section 408(a) of the Tax Code, 72 P.S. §7408(a), authorizes the department to collect "taxes, penalties and interest imposed by this article." Section 408(b) of the Tax Code, 72 P.S. §7408(b), permits the department to conduct investigations to verify the accuracy of any report made.

[10] 40 P.S. §637.

510

tribution of the tax. Thus, because section 706 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §246, provides that the powers and duties of the Auditor General are those that are imposed upon him by the constitution and laws of the Commonwealth, he contends that the Insurance Act does not impose any duties upon him, and that, therefore, he not only is not required to oversee the collection of the tax, but he has no discretion to do so.[11] Because those arguments constitute a correct statement of the applicable laws, we must agree that a mandamus action here cannot include the Auditor General.

Likewise, although section 2262 does provide that the State Treasurer shall pay to the treasurers of various municipalities the net proceeds of the tax paid upon premiums by foreign fire insurance companies, that section indicates that such proceeds shall be based on reports made to the Department of Revenue. Thus, because the complaint does not allege that the State Treasurer is distributing the funds contrary to law, that he has the duty or discretion to ensure that these reports are being made correctly, or that he possesses any duty, responsibility, power or authority with respect to the administration or implementation of the Insurance Act, we must conclude that

[11] The Auditor General also asserts that he is constitutionally and statutorily prohibited from providing the requested relief because Pa. Const. art. 8, §10, and the Tax Code prohibit him from approving any transaction relative to the financial affairs of the Commonwealth before its occurrence, which the Auditor General is required or empowered to audit after its occurrence, and that in *Volunteer Firemen's Relief Association v. Minehart,* 415 Pa. 305, 203 A.2d 476 (1964), our Supreme Court held that the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §403, imposed on the Auditor General a duty to audit accounts and records of firemen's relief fund associations which receive monies under section 2262.

the township has failed to state a claim upon which relief can be granted against the State Treasurer.[12]

However, as to the demurrers of the Secretary of Revenue and the Insurance Commissioner, arguing that any enforcement powers they have are discretionary, we find our Supreme Court's decision in *Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A.2d 737 (1942), applicable. In that case, a hotel, following a decision by our Supreme Court that hotels operating dining rooms for the convenience of their guests were not subject to the payment of the restaurant mercantile license tax, applied to the Pennsylvania Board of Finance and Revenue for a refund of taxes paid under an erroneous interpretation of that tax. The board had argued that under the applicable statute,[13] it had complete discretion to determine whether the refund shall in fact be made. The court responded to this argument and said:

> It would seem both illogical and unreasonable to assume that, when the legislature attempted to correct a rigor of the law that caused an injustice and in so acting made it the duty of one of its fiscal agents to determine whether a tax had been collected to which the state was not rightfully or equitably entitled and made specific provision for a refund or credit in the event of such a finding, it intended only such illusory relief as would leave the granting of the refund to the unlimited discretion of the agency. . . . Consequently, where a statute directs the doing

12 The State Treasurer was the only state official to include in his preliminary objections a motion for more specific pleadings. Because we are granting the State Treasurer's preliminary objection as to the demurrer portion, we need not consider the motion for more specific pleadings.

13 Section 503 of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended* by Act of June 6, 1939, P.L. 261, 72 P.S. §503.

of a thing for the sake of justice the word "may" means the same thing as the word "shall". The principle is thus stated in Supervisors, Rock Island Co. v. United States, 71 U.S. 435, 446, 18 L. Ed. 419; "The conclusion to be deduced from the authorities is, that where power is given to public officers and the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—and the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given not for their benefit, but for his. It is placed with the depositary to meet the demands of right, to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remedyless. In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose "a positive and absolute duty."

*Id.* at 579, 23 A.2d at 740.

Likewise, the requirements of the Company Law and section 2262, when read together, that the Insurance Commissioner require insurance companies to ensure that insurance policies reflect the "exact name of the [municipality] wherein the insured property is located,"[14] and the requirements, under section 2262, that the Department of Revenue make a report allocating the proper distribution of the foreign insurance firemen's tax, indicate that the legislature intended that those agencies protect the rights of firemen's relief fund associations and municipalities.

---

[14] *See* section 506(8) of the Company Law, 40 P.S. §636(8).

Thus, assuming the facts to be as pleaded,[15] mandamus here is a proper remedy:

> If the facts set forth in the petition are found to be true, the commission is required to perform a purely ministerial act, to wit, to direct refund or a credit. There would therefore seem to be no question but that mandamus is the proper remedy.

*Id.* at 483, 23 A.2d at 742.[16]

Therefore, the demurrer aspect of the preliminary objections of the State Treasurer and the Auditor General are sustained, and those of the Insurance Commissioner and the Secretary of Revenue are overruled.

### ORDER

Now, April 19, 1983, the preliminary objections of Robert Bloom, Secretary of Revenue of the Commonwealth of Pennsylvania, and Michael L. Browne, Insurance Commissioner of the Commonwealth of Pennsylvania, paragraphs 1-11, inclusive, are overruled.

The preliminary objections of Al Benedict, Auditor General of the Commonwealth of Pennsylvania, paragraphs 1-12, inclusive, are sustained.

The preliminary objections of R. Budd Dwyer, State Treasurer of the Commonwealth of Pennsylvania, are determined as follows:

#### *Standing*

Paragraphs 1-8, inclusive, are overruled.

---

[15] *See* footnote 7 above.

[16] In *Hotel Casey*, the court recognized that:

Although the writ [of mandamus] is granted by the law side of the court, equitable principles largely govern its insurance and it will be granted only "where necessary to promote the ends of justice and where the prayer of the petitioner appeals to the conscience of the court."

*Id.* at 582, 23 A.2d at 742.

*Indispensable and Necessary Parties*

Paragraphs 9-15, inclusive, are overruled.

*Demurrer*

Paragraphs 16-24, inclusive, are sustained. Paragraphs 25-27, inclusive, a motion for more specific pleadings, are thereby moot.

*Amended Pleadings*

Paragraphs 1-9, inclusive, of the State Treasurer's amended pleadings, which supplement paragraphs 9-15 of his original preliminary objections regarding the indispensable party issue, are overruled.

---

CONCURRING AND DISSENTING OPINION BY JUDGE DOYLE:

I join with the majority but would also find that the neighboring municipalities are indispensable parties and would insist on their joinder under the applicable Rules of Civil Procedure. Unlike in *Mechanicsburg,* any finding here that the Township of South Fayette is entitled to additional tax revenues, would diminish the revenues which would accrue to the surrounding municipalities.