Northeastern Educational Intermediate Unit No. 19, Petitioner *v.* Commonwealth of Pennsylvania, Office of the Auditor General and Al Benedict, The Auditor General of the Commonwealth of Pennsylvania, Respondents.

Argued April 30, 1984, before Judges WILLIAMS, JR., DOYLE and BLATT, sitting as a panel of three.

*Paul L. Stevens,* with him, *Jeffrey T. Tucker* and *Ellis H. Katz, Curtin and Heefner,* for petitioner.

*Charles D. Shields, Jr.,* with him, *Alan Kohler* and *James L. McAneny,* for respondents.

OPINION BY JUDGE WILLIAMS, JR., August 15, 1984:

Petitioner, Northeastern Educational Intermediate Unit No. 19 (NEIU), an educational unit under the provisions of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §9-951 to §9-971,[1] was established to provide educational services to children who are residents of the twenty school districts located in Lackawanna, Wyoming, Wayne and Susquehanna Counties. Like all entities which receive funding from the Commonwealth of Pennsylvania, NEIU is subject to financial audits in accordance with the Pennsylvania Constitution, Article 8, §10.[2] Such an audit of NEIU's financial affairs for the 1979-80 through 1981-82 school years was performed by Al Benedict, the Pennsylvania Auditor General, pursuant

---

[1] By virtue of a 1970 amendment to the Pennsylvania School Code, the Act of May 4, 1970, P.L. 311, No. 102, §1, 24 P.S. §9-951 to 9-971, intermediate units were established as part of the public school system in the Commonwealth. Each school district in the Commonwealth was assigned to one of the 29 intermediate units created by the amendment. Intermediate units have the duty and power to plan and provide designated educational services on behalf of their constituent school districts.

[2] The Pennsylvania Constitution, Article 8, §10, provides:

The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.

to his statutory authority under Section 403 of the Fiscal Code.[3] The report of that audit, which was formally released on September 21, 1983, identified numerous deficiencies in the management, fiscal and accounting procedures of NEIU. Among the deficiencies identified were: failure of NEIU to recover over $600,000 in tuition and transportation costs expended to provide educational services to children from other states; misallocation of funds earmarked for special education programs in order to defray deficits incurred for data processing; failure to comply with state and federal regulations regarding proper bidding procedures for purchases of equipment and services; expenditure of $56,490 for leased space which was inaccessible and unusable; maintenance of unauthorized bank accounts, and inadequate controls and accounting for sales, expenditures and inventory in connection with a greenhouse which NEIU operated

[3] Act of April 9, 1929, P.L. 343, art. IV, §403. This section reads:

The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.

If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury.

as part of its special education curriculum; and expenditures in excess of $100,000 to a special consultant whose hiring was never approved by NEIU's board. In his report, covering some 63 pages, the Auditor General made numerous recommendations to NEIU regarding means of correcting the cited deficiencies. Also included in the report were several recommendations to the Commonwealth Department of Education regarding what the Auditor General considered to be an appropriate departmental response to the findings. None of the recommendations was binding on either NEIU or the Department of Education. NEIU has petitioned this Court for review of the audit report on the grounds that the Auditor General exceeded his statutory authority in preparing and issuing the report, that the procedures utilized by the Auditor General violated NEIU's right to due process, and that the statements and findings contained in the report are biased, discriminatory, and erroneous.

An important threshold inquiry must precede, and perhaps preempt, any consideration of whether the audit report was authorized or fair. That inquiry is whether the issuance of this audit report is an "adjudication" within the intendment of the Administrative Agency Law,[4] such that an appeal may be taken. NEIU relies on our opinions in *Auditor General of Pennsylvania v. East Washington Borough*, 23 Pa. Commonwealth Ct. 382, 351 A.2d 687 (1976) and *School District of Lancaster v. Commonwealth Department of Education*, 73 Pa. Commonwealth Ct. 246, 458 A.2d 1024 (1983) in asserting that the audit report

---

[4] 2 Pa. C.S.A. §101 defines "adjudication" as:

[A]ny final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

constitutes an adjudication. The Auditor General, on the other hand, argues strenuously that *East Washington Borough* is inapposite to this case inasmuch as, in *East Washington Borough,* the Auditor General exercised independent authority to deny an appropriation on the basis of findings made in his audit report, while in this case, the Auditor General has no independent authority to implement any of the recommendations made in the audit report. With respect to *Lancaster,* the Auditor General contends that, to the extent that the case is read to ascribe adjudicatory significance to all audit reports issued by the Auditor General's office, the holding undermines an orderly administrative review process and should be abandoned. Given the significance of *Lancaster* and *East Washington Borough* to the resolution of this issue, it behooves us to summarize those cases before enunciating our view of how they impact this appeal.

*East Washington Borough* came before us on a motion to quash exceptions filed by the Borough of East Washington from the Auditor General's findings in the course of an audit of the borough's police pension fund, and from his decision, based on those findings, to decline to approve payments of tax revenues to which the borough would have been entitled but for the negative audit report. This court held that the Auditor General's action was final, affected the borough's property rights, and was, therefore, an "adjudication" under the then-pertinent provision of the Administrative Agency Law.[5]

---

[5] 71 P.S. 1710.2(a) defined "adjudication" as:

[A]ny final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made. . . .

This section was repealed and replaced by Act of April 28, 1978, P.L. 202, No. 53 §2(a) [1244], 2 Pa. C.S.A. §101, *see fn. 4, supra.*

In *Lancaster,* the petitioner school district appealed from a letter issued by the Department of Education declining to modify an audit finding by the Auditor General that a forfeiture of $18,000 in state educational aid was mandated by the Public School Code due to the school district's employment of improperly certified teachers. The Department argued that the letter was not an adjudication, and that in light of the Auditor General's finding and the specific sanction mandated by the School Code for employing as a teacher a person not certified for that position, its role was purely ministerial and nonreviewable. We agreed. Furthermore, relying on *East Washington Borough* we held that the appropriate course would have been for the school district to appeal the audit report itself.

We think that neither of these cases supports the appealability of the audit report involved in this case. We agree with the Auditor General that our holding in *East Washington Borough* must be read within the context of the particular facts of that case: *i.e.* the Auditor General exercised his independent authority to deny further appropriations based on his finding of fund mismanagement. In the instant case, however, the Auditor General has no independent authority to implement any of the recommendations contained in his report, and he has taken no action which immediately and directly affects any cognizable interest of NEIU. Furthermore, our holding in *Lancaster* is limited to those situations in which the Public School Code or other statutory authority, when applied to the Auditor General's findings, dictates a result over which no other agency or department has discretion. This limitation is strongly indicated in the last line of the *Lancaster* decision, which reads: ''Having failed to challenge the Audit Report and its Finding Number

1, the school district may not now complain that the Department has complied, *as it was required to do,* with the mandate of the report and the Public School Code." 73 Pa. Commonwealth Ct. at 250, 458 A.2d at 1026 (emphasis added). Our review of the audit report in the instant case reveals no finding which triggers a specific and automatic sanction as did the finding in *Lancaster.*

As the Auditor General points out, there is a well-defined administrative procedure for local public educational agencies to review and respond to exceptions, criticisms and recommendations contained in audit reports issued by the Auditor General. That procedure, contained in Procedure 5 of Governor's Management Directive No. 305.1, as amended (dated April 17, 1981) affords local educational units notice and the opportunity to be heard prior to the Department of Education taking corrective action on the basis of the audits. There has been no suggestion that pursuit of this procedure would be either futile or inadequate. To allow appeals from audit reports while this review mechanism remains unexhausted would pose an unwarranted and wasteful interference in the administrative process, and would be utterly contrary to the requirement of finality embodied in the Administrative Agency Law. As the Pennsylvania Supreme Court observed, "courts should not presume futility in the administrative appeal; on the contrary, they should assume that the administrative process will, if given a chance, discover and correct its own errors." *Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 74-75, 422 A.2d 141, 144 (1980), quoting B. Schwartz, Administrative Law §172 at 498 (1976). We heed the Supreme Court's admonition, and, accordingly, quash the petition for review in this case.

## ORDER

AND Now, this 15th day of August, 1984, the Petition For Review is quashed.

Judge DOYLE concurs in the result only.