IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny Intermediate Unit | : | |
| | : | |
| v. | : | No. 484 C.D. 2018 |
| | : | Argued: October 15, 2018 |
| East Allegheny School District, | : | |
| Appellant | : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT FILED: January 25, 2019

East Allegheny School District (School District) appeals an order of the Court of Common Pleas of Allegheny County (trial court) entering judgment in favor of the Allegheny Intermediate Unit (Intermediate Unit) on a breach of contract action. The trial court ordered the School District to pay $3,023,067, plus interest, to the Intermediate Unit for special education services it had provided to the School District's students over the course of several years. On appeal, the School District argues that it did not have a contractual obligation to make these payments because the Intermediate Unit did not issue invoices for these services in a timely manner. The School District also argues that the Intermediate Unit was not entitled to invoke *nullum tempus occurrit regi* ("time does not run against the king") to defeat the applicable statute of limitations that barred at least some of the Intermediate Unit's breach of contract claims. Finally, the School District argues the trial court abused its discretion in awarding interest on the judgment. For the reasons to follow, we affirm.

## Background

The Intermediate Unit provides special education services to students in 42 school districts and five vocational schools in Allegheny County, including those enrolled in the School District.[1] Joint Stipulation of Facts, ¶2; Reproduced Record at 299a (R.R. __). The Intermediate Unit provides "District Based" services in the School District's classrooms and "Center Based" services in schools operated by the Intermediate Unit. Joint Stipulation of Facts, ¶15; R.R. 301a. Beginning with the 2009-2010 school year, and for each of the school years between 2010-2011 and 2014-2015, the Intermediate Unit and the School District entered into a separate "Educational Services Agreement" (contract) with respect to these special education services. Under each contract, the Intermediate Unit agreed to provide special education services to the School District's students, and the School District agreed to pay the Intermediate Unit for the services it provided. Each yearly contract imposed a payment schedule upon the School District. For example, for the 2011-2012 school year, the contract provided that the School District was to remit its payment as follows:

| Sept. 15, 2011 | 20% of total 10/11 bill as advance payment for the 2011/2012 school year. |
| --- | --- |
| Nov. 15, 2011 | 25% of actual billing for 11/12 based on student information in the Special Education Database. Advance (20%) payment will be *deducted* from the total bill. |
| Feb. 15, 2012 | 25% of actual bill based on student information in the Special Education Database. |
| March 15, 2012 | 25% of actual bill based on student information in the Special Education Database. |

[1] The School District is comprised of the communities of North Versailles, East McKeesport, Wilmerding and Wall, along with students from Duquesne City (grades 7-12). Trial court 1925(a) opinion, 5/25/2018, at 3.

2

| May 15, 2012 | 25% of actual bill based on student information in the Special Education Database. |
| --- | --- |

R.R. 536a (emphasis in original). Each successive contract contained a substantially similar payment schedule.

Prior to the inception of the 2010-2011 school year, the School District requested a modification to the above-stated payment schedule because of its financial difficulties, and the Intermediate Unit agreed. Under the modification, the Intermediate Unit agreed to invoice the School District $75,000 a month for 10 months; at the end of the school year, the Intermediate Unit would issue an invoice that reconciled the School District's accumulated payment to the actual cost of services provided. The modification, memorialized in an email dated August 26, 2010, stated as follows:

> We will invoice [the School District] mid September. The invoice will be $75,000 based on the estimate (that was mailed out prior to the new year starting) divided by 10 months. Obviously, the final invoice (June) will be reconciled based on the actual utilization of services….

R.R. 881a. The modification was agreed to by the parties in each successive contract, with an increase in the monthly payment to $85,000 for the 2014-2015 school year.

In the Spring of 2015, the Intermediate Unit discovered that it had not issued the above-described reconciliation invoice for several school years.[2] On June 2, 2015, the Intermediate Unit sent the School District the reconciliation invoice for the 2014-2015 school year. Joint Stipulation of Facts, ¶27; R.R. 303a (*See* Summary

---

[2] The Intermediate Unit did send the School District a reconciliation invoice for Center Based Services provided during the 2013-2014 school year, which the School District paid. Joint Stipulation of Facts, ¶22; R.R. 302a. The Intermediate Unit did not send a reconciliation invoice for the District Based Services provided during that year.

Spreadsheet at R.R. 503a-16a). Then, on June 16, 2015, the Intermediate Unit issued final reconciliation invoices for each contract year. Joint Stipulation of Facts, ¶28; R.R. 303a (*See* Summary Spreadsheet at R.R. 872a-75a). The School District informed the Intermediate Unit that it would not pay any of the invoices, including the invoice for the 2014-2015 school year.

In March 2016, the Intermediate Unit filed the instant action against the School District for breach of contract and unjust enrichment. The Intermediate Unit asserted that the School District breached the parties' contract by not paying in full for the special education services it had received for the school years 2010-2011 through 2014-2015. The Intermediate Unit contended that the School District owed $3,300,250, plus interest, for services provided over the five school years.[3]

Initially, the parties filed cross-motions for partial summary judgment on the question of whether the statute of limitations barred any part of the Intermediate Unit's breach of contract action. By order of September 12, 2017, the trial court denied the School District's motion, holding that the Intermediate Unit, as an agency of the Commonwealth, could invoke the doctrine of *nullum tempus occurrit regi*. The parties then addressed the issues of liability and damages.

The parties filed a joint stipulation of facts and motions for partial summary judgment on the issue of liability. Following argument, the trial court granted the Intermediate Unit's motion, holding the School District liable for breach of contract. The trial court denied the School District's motion for partial summary judgment on liability.

---

[3] The complaint alleged that the School District owed $1,090,469 for the 2010-2011 school year; $658,390 for the 2011-2012 school year; $871,070 for the 2012-2013 school year; $122,358 for the 2013-2014 school year; and $557,963 for the 2014-2015 school year. Complaint, ¶¶16, 20 and 24; R.R. 77a-78a.

4

On December 13, 2017, the trial court conducted a trial on the issue of damages. At trial, the Intermediate Unit offered evidence that upon further reconciliation, the amount the School District owed was $3,023,067. Thereafter, the parties submitted proposed findings of fact and conclusions of law. On February 5, 2018, the trial court entered judgment in favor of the Intermediate Unit in the amount of $3,023,067, and interest in the amount of $194,483.98, for a total judgment of $3,217,550.98. The trial court assessed 12% annual interest, to accrue from the date of the order until final payment on the judgment. On March 16, 2018, the trial court denied the School District's motion for post-trial relief.

On appeal,[4] the School District raises several assignments of error by the trial court. First, the School District argues that the trial court erred in holding that it breached its contract with the Intermediate Unit. Second, the School District argues that the trial court erred in holding that the statute of limitations did not bar the Intermediate Unit's breach of contract claims that arose prior to March 4, 2012. Third, the School District argues that the trial court abused its discretion by awarding interest at the rate of 12% *per annum*.

## Breach of Contract

The School District argues that the trial court erred in holding that it breached its contract with the Intermediate Unit because the condition precedent to its duty to make payment did not occur. Specifically, it argues that each contract required the Intermediate Unit to issue a reconciliation invoice in June of each school

---

[4] When reviewing a non-jury verdict, this Court's standard of review determines whether competent evidence supports the trial court's findings or whether the trial court committed an error of law. *John Spearly Construction, Inc. v. Penns Valley Area School District*, 121 A.3d 593, 601 (Pa. Cmwlth. 2015). This Court views the evidence in the light most favorable to the party that prevailed below. *Id.* "An appellate court will not disturb a trial court's finding [of fact] absent an abuse of discretion or error of law." *Id.*

year, and the Intermediate Unit did not satisfy this condition precedent. Accordingly, the School District did not have a duty to pay the untimely invoices.

For a breach of contract claim, a party must show: "(1) the existence of a contract; (2) a breach of the duty imposed by the contract; and (3) damages resulting from the breach." *Sewer Authority of City of Scranton v. Pennsylvania Infrastructure Investment Authority*, 81 A.3d 1031, 1041-42 (Pa. Cmwlth. 2013). A condition precedent "is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS §224 (1981). Stated otherwise, a duty to perform does not arise unless or until the condition occurs. *Acme Markets, Inc. v. Federal Armored Express, Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994). Parties do not have to use "*any* particular words to create a condition precedent[.]" *Id.* (emphasis in original). But, "[g]enerally, an event mentioned in a contract will not be construed as a condition precedent unless expressly made such a condition." *West Development Group, Ltd. v. Horizon Financial, F.A.*, 592 A.2d 72, 76 (Pa. Super. 1991). If a condition precedent does not occur, "the duty to perform under the contract lays dormant and no damages are due for non-performance." *Boro Construction, Inc. v. Ridley School District*, 992 A.2d 208, 215 (Pa. Cmwlth. 2010). Notably, conditions precedent are highly disfavored and "will be strictly construed against the one seeking to avail himself of them." *Allentown Patriots, Inc. v. City of Allentown*, 162 A.3d 1187, 1195 (Pa. Cmwlth. 2017) (citing 17A AM. JUR. 2d, *Contracts*, §452 at 440 (2016)).

Here, each contract obligated the School District to pay the Intermediate Unit for the special education services provided to its students. Each contract states, in relevant part, as follows:

> The [School] District agrees to pay the [Intermediate Unit] the sum of the estimated cost of each program or service, such sum to be paid in installments in accordance with [the payment schedule.]

R.R. 84a. The modification states as follows:

> The invoice will be $75,000 based on the estimate (that was mailed out prior to the new year starting) divided by 10 months. Obviously, the final invoice (June) will be reconciled based on the actual utilization of services….

R.R. 881a. The modification was limited to the payment schedule and did not have any impact upon the School District's contractual duty to pay for the special education services it actually received. To the contrary, the modification made it clear that there would be a final reconciliation and that payment for "actual utilization of services" was required. The possibility that the 10 monthly payments would exactly equal the services rendered over 12 months was unlikely in the extreme. Simply, the language of the modification cannot be construed to state a condition precedent that may, or may not, take place. We reject the School District's contention otherwise.

Alternatively, the School District argues that the trial court erred because the Intermediate Unit cannot recover for its unilateral mistake. The School District contends that the modification was specific as to when the Intermediate Unit was to send the reconciliation invoice, *i.e.*, in June of each contract year. The failure of the Intermediate Unit to do so was a mistake, and this negligence bars the Intermediate Unit's breach of contract action.

The parties stipulated to the following facts:

> 19. On August 26, 2010 [the] Assistant Director of Finance at the [Intermediate Unit] entered into an arrangement with [] the Business Manager for [the School District], to modify the

7

parties' [contract] so that [the School District] would be invoiced in [sic] a monthly basis starting in mid-September of 2010. Pursuant to the arrangement, the [Intermediate Unit] was expected to invoice [the School District] $75,000 per month for ten months with a reconciliation to be issued at the end of the school year.

20. Per the modified payment arrangement, [the School District] understood and agreed that at the end of the school year, the remaining balance owed by [the School District] to the [Intermediate Unit] for the special education services received was to be "reconciled" and invoiced to [the School District].

Joint Stipulation of Facts, ¶¶19-20; R.R. 302a. This stipulation established that at the end of the school year both parties "understood" that the "remaining balance" would be "reconciled and invoiced." *Id.* However, the stipulation did not identify the parties' "understanding" as to the date for the issuance of the reconciliation invoice.

The modification stated that the "final invoice (June) will be reconciled based upon the actual utilization of services." R.R. 881a. This language established how the final invoice would be calculated, *i.e.*, on the basis of actual services provided through the school year. However, the aside "(June)" does not state a specific deadline for the Intermediate Unit to issue the reconciliation invoice. Stated otherwise, there is no foundation to the School District's "mistake" argument because there was never a definitive "understanding" about the date for the issuance of the reconciliation invoice.

We reject the School District's contention that the modification established a condition precedent to the School District's obligation to pay the Intermediate Unit for services or that there was a "mistake" by the Intermediate Unit that barred its breach of contract action. Accordingly, we discern no error in the trial

8

court's holding the School District liable to pay the Intermediate Unit for the special education services it provided.

## Statute of Limitations

The School District next argues that the trial court erred by holding that the Intermediate Unit's claims that arose prior to March 2012 were not barred by the statute of limitations. Specifically, it contends that the four-year statute of limitations for contract actions prevented the Intermediate Unit from asserting a claim for payment of services provided prior to March 4, 2012. The School District argues that the trial court erred in holding that the doctrine of *nullum tempus occurrit regi* excused the Intermediate Unit from the four-year statute of limitations.

In Pennsylvania, a breach of contract action must be commenced within four years. The Judicial Code states as follows:

> General rule.--Except as provided for in subsection (b) [(an action relating to damages in actions for identity theft)], the following actions and proceedings must be commenced within four years:
>
> ***
>
> (8)     An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7) [relating to a bond], under seal or otherwise, except an action subject to another limitation specified in this subchapter.

42 Pa. C.S. §5525(a)(8). The statute begins to run on the date of the breach. *GAI Consultants, Inc. v. Homestead Borough*, 120 A.3d 417, 423-24 (Pa. Cmwlth. 2015).[5]

---

[5] The School District argues that the Intermediate Unit's breach of contract action had to be filed within four years of the end of the first school year, *i.e.*, within four years of June of 2011. Instead, the Intermediate Unit filed its action on March 4, 2016.

The doctrine of *nullum tempus* permits a government agency "to circumvent the applicable statute of limitations." *Duquesne Light Company v. Woodland Hills School District*, 700 A.2d 1038, 1051 (Pa. Cmwlth. 1997). To invoke *nullum tempus*, the government must be enforcing a right that is strictly public and one imposed by law. *Id*. Where the government agency "seeks to enforce purely contractual rights where [it] was not required to enter into the contract[,]" *nullum tempus* cannot be invoked. *Township of Salem v. Miller Penn Development, LLC*, 142 A.3d 912, 918 (Pa. Cmwlth. 2016). This Court has explained as follows:

> *An action involving a local government contract* or agreement is brought in the local government's governmental capacity *and seeks to enforce obligations imposed by law where the contract is one that the local government entity was required to enter into as part of its public duties. Duquesne Light Co.,* 700 A.2d at 1052 (*nullum tempus* applied to school district construction contract for school facilities because school district was required by law to construct school facilities). The requirement that the action be brought in the local government's governmental capacity and seek to enforce obligations imposed by law is likewise satisfied and *nullum tempus* applies where the parties' rights are governed by statute, even though the local government was not required to enter into the contract. *Delaware County* [*v. First Union Corp.*, 929 A.2d 1258, 1261 (Pa. Cmwlth. 2007)]

The Intermediate Unit sent the School District the final invoice for the 2010-2011 school year in June of 2015. The School District's refusal to pay constituted the breach of contract that triggered the statute of limitations. The stipulation does not state when the School District refused to pay the invoices. Assuming the refusal took place in July of 2015, four years from the School District's breach has not yet run.

The School District argues that the Intermediate Unit breached the contract by not sending the first reconciliation invoice in June of 2011. However, the School District did not counter-claim against the Intermediate Unit for breach of contract.

The trial court decided the case on *nullum tempus*, and we review that holding on its merits. It may be, however, that the four-year statute of limitations for the Intermediate Unit to initiate its breach of contract action, even for the reconciliation invoice for the 2010-2011 school year, will not run until 2019. This is because the School District's refusal to pay took place in 2015. This argument has not been advanced by the Intermediate Unit before this Court.

10

> (*nullum tempus* applied to action for unclaimed bond payments because while county had discretion to decide whether to issue bonds, once bonds were issued the parties' rights were controlled by statute).

*Id*. (emphasis added).

With these principles in mind, we turn to the School District's arguments. Intermediate units were created by the Public School Code of 1949[6] and are part of the public school system in Pennsylvania. *Northeastern Educational Intermediate Unit No. 19 v. Office of Auditor General*, 479 A.2d 1166 n.1 (Pa. Cmwlth. 1984). Intermediate units must provide special education services to students in the specified school districts. To that end, they enter into contracts with school districts. *See* Section 920-A(b)-(c) of the Public School Code of 1949, 24 P.S. §9-920-A(b)-(c).[7]

---

[6] Sections 901-A to 924-A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of May 4, 1970 P.L. 311, 24 P.S. §§9-901-A - 9-924-A. Section 1 of the Act of May 4, 1970, P.L. 311, *as amended*, *formerly* 24 P.S. §§9-951 to 9-974, 24 P.S. §§9-901-A to 901-924-A, created intermediate units.

[7] This section states, in relevant part:

> (b) Less than a majority of the school districts comprising an intermediate unit may contract with the intermediate unit for services to be provided for the contracting school districts by the intermediate unit, with the cost of such services to be paid by the contracting school districts in such manner as they may agree upon.
>
> (c) If a school district desires to independently provide a service that is included in the approved program of services to be offered by an intermediate unit, and the service is to be financed solely by the school district, and if the intermediate unit board of directors determines that the quality of such service is adequate and that such independent action will not adversely affect the service to be offered to the remaining districts by the intermediate unit, the intermediate unit board of directors may relieve the school district of payment for such service.

24 P.S. §9-920-A(b)-(c).

11

The Intermediate Unit has a statutory duty to provide special educational services to the School District's students, and its contract with the Intermediate Unit was necessary "to enforce obligations imposed by law[.]" *Township of Salem*, 142 A.3d at 918. Stated otherwise, the Intermediate Unit's contract was not "voluntary" and, thus, it was entitled to invoke the doctrine of *nullum tempus* in response to the School District's assertion that the statute of limitations barred its breach of contract action.

However, the School District argues, alternatively, that the Intermediate Unit has waived *nullum tempus* because it did not raise that defense in the pleading stage of litigation.[8] In support, the School District directs this Court to *Township of Indiana v. Acquisitions & Mergers, Inc.*, 770 A.2d 364 (Pa. Cmwlth. 2001).

In *Township of Indiana*, the defendant to the township's action argued that the statute of limitations barred the township's claim. The township did not assert *nullum tempus* until it filed an application for reargument with this Court. This Court recognized that, although *nullum tempus* is "a sword to strike down the statute of limitations defense[,]" it is "subject to waiver when the sovereign plaintiff fails to assert its rights." *Id.* at 372. We explained as follows:

> The sword of nullum tempus, however, is not like Excalibur and capable of prevailing regardless of the hour it is treated. We are not persuaded that the moving party's status as a governmental entity should exempt it from the established rules of civil and appellate procedure. In the area of procedure, "[n]o special dispensation from the rules of evidence is accorded to the Commonwealth. Like private parties, the Commonwealth 'must meet the burden of proof, its evidence must be relevant, material,

---

[8] "New matter[] pleading is designed to compel a plaintiff to answer the defendant's affirmative defenses during the pleading stage to avoid an unnecessary trial." *Chivers v. School District of Mt. Lebanon*, 297 A.2d 187, 189 (Pa. Cmwlth. 1972) (quotation omitted).

12

the best attainable, and (the evidence) must be presented in due order under the regular rules of procedure.'"

770 A.2d at 372-73 (quoting *Department of Transportation v. J.W. Bishop Company, Inc.*, 439 A.2d 101, 104 (Pa. 1981)). On this record, this Court held that the township had waived *nullum tempus*.

*Township of Indiana* is distinguishable. The Intermediate Unit raised *nullum tempus* prior to trial in its pretrial statement and in its motion for partial summary judgment. *See* PA. R.C.P. No. 1035.2(1) (a party may move for partial summary judgment "whenever there is no genuine issue to any material fact as to a necessary element of the cause of action or defense…."). Unlike the Township of Indiana, the Intermediate Unit did not wait until the appellate stage of litigation to invoke *nullum tempus*.

As noted, the School District argues that the Intermediate Unit waived *nullum tempus* because it did not raise the doctrine in its answer to the School Disrict's new matter. An affirmative defense "raises new facts and arguments that, if true, defeat the plaintiff's claim, even if all the allegations contained in the complaint are true." *R.H.S. v. Allegheny County Department of Human Services, Office of Mental Health*, 936 A.2d 1218, 1227 (Pa. Cmwlth. 2007). Pennsylvania Rule of Civil Procedure 1030(a) provides that "all affirmative defenses" must be pled in a responsive pleading and states as follows:

> Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, *statute of limitations*, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter."

13

PA. R.C.P. No. 1030(a) (emphasis added). Where a party fails to raise an affirmative defense, it is waived. PA. R.C.P. No. 1032(a).[9]

The School District argues that the doctrine of *nullum tempus* is an affirmative defense that must be raised in a pleading to be preserved. It contends that the Intermediate Unit had to raise *nullum tempus* in its answer to the School District's new matter. We disagree.

Rule 1030(a) does not specify that the doctrine of *nullum tempus* is an affirmative defense that must be raised in a pleading. In fact, the Pennsylvania Rules of Civil Procedure do not provide any specific direction with respect to raising *nullum tempus*. On the other hand, our Supreme Court has held that under *nullum tempus*, "statutes of limitations cannot be pleaded against … political subdivisions[,]" *City of Philadelphia v. Holmes Electric Protective Company of Philadelphia*, 6 A.2d 884, 887 (Pa. 1939), where the government agency has initiated litigation to "protect public rights, revenues and property from injury and loss." *Delaware County*, 929 A.2d at 1261. Precedent holds that to employ the doctrine of *nullum tempus* "merely requires that it be raised at the appropriate stage of litigation." *Township of Indiana*, 770 A.2d at 373; *City of Philadelphia,* 6 A.2d at 887. The Intermediate Unit invoked *nullum tempus* in its pre-trial statement and in its motion for partial summary judgment, *i.e.*, at the "appropriate stage" of

---

[9] It states:

> A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

PA. R.C.P. No. 1032(a).

litigation. Thus, we reject the School District's argument that the Intermediate Unit has waived *nullum tempus* by not raising it in its answer to the School District's new matter.

**Interest Addition to Judgment**

Finally, the School District argues that the trial court abused its discretion by awarding interest at a rate of 12% *per annum*. The Intermediate Unit responds that the School District agreed to this interest rate.

Generally, if a contract expressly provides for the payment of interest, "the interest is said to become an integral part of the debt itself, and, therefore, is recoverable as of right under the terms of the contract." *TruServ Corp. v. Morgan's Tool & Supply Company, Inc.*, 39 A.3d 253, 262 (Pa. 2012). Our Supreme Court has explained:

> [I]t is a well-established principle of contract law that, where the language of a contract is clear and unambiguous, a trial court is required to give effect to that language. Indeed, this Court has cautioned that it is not the function of a court to rewrite agreements between parties, and a court must give effect to the clear terms to which the parties have agreed. Thus, we have no hesitation in concluding that, where the terms of a contract provide for the payment of interest, a court's award of such interest in favor of the prevailing party is not discretionary.

*Id.* at 261 (internal citations omitted) (a contractual obligation to pay interest deprived trial court of discretion not to include this interest in award).

Here, the parties agreed to the payment of interest on any unpaid balance. Specifically, the contract provides:

c. Late Payment Charge

> A late payment charge of 1% per month on any unpaid balance will be applied to any account that is over 60 days past due.

R.R. 84a. The School District argues that this charge was eliminated by the modification. We disagree. The modification related solely to the School District's payment schedule and did not alter the above-quoted late payment charge provision.

The School District contends that it was prejudiced because it did not receive the Intermediate Unit's calculations of the interest owed on the outstanding balance prior to trial. First, the contract expressly provided for the payment of interest and the rate of interest. Second, in its pretrial statement, the Intermediate Unit stated that it requested interest at the rate of 1% per month on the outstanding balance, and the amount of interest accrued exceeded $700,000. R.R. 122a. Third, in awarding interest, the trial court decided that

> interest should start to accrue on June 17, 2017, which was 60 days from when [the Intermediate Unit] delivered the final reconciliation invoice to [the School District's] counsel, and more than two years from the date that the last special education service was provided by [the Intermediate Unit].

Trial court 1925(a) opinion, 5/25/2018, at 8. In sum, the trial court's award of interest to the Intermediate Unit was fully consonant with the contract. The trial court did not have the discretion to award a different rate of interest, let alone abuse its discretion.

## Conclusion

For all the above-stated reasons, we affirm the trial court's judgment awarding the School District $3,023,067, plus interest, in contract damages.

_____
MARY HANNAH LEAVITT, President Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Intermediate Unit       :
      :
             v.            : No. 484 C.D. 2018
      :
East Allegheny School District,       :
             Appellant       :

## **O R D E R**

AND NOW, this 25th day of January, 2019, the order of the Court of Common Pleas of Allegheny County dated March 16, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge