COMMONWEALTH ASSOCIATION OF SCHOOL ADMINISTRATORS, by Trustee Ad Litem, Michael C. AXEL-ROD, Appellant,

v.

BOARD OF EDUCATION, SCHOOL DISTRICT OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1999.

Decided Nov. 19, 1999.

**1226** ■ ▬▬▬▬▬▬▬

John A. Ryan, Philadelphia, for appellant.

Barbara A. McNeil, Philadelphia, for appellee.

Before PELLEGRINI, J., LEADBETTER, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth Association of School Administrators (Association) appeals from an order of the Court of Common Pleas of Philadelphia County, Civil Division (trial court) denying its petition for review of an interest arbitration award (arbitration award) issued by a panel of arbitrators pursuant to what is commonly known as Act 105, Act of April 9, 1929, P.L. 177, added by Act of July 11, 1996, P.L. 619, *as amended,* 71 P.S. § 371.

By way of background, Act 105 was enacted in 1996 providing for collective bargaining between school administrators employed by school districts in cities of the first class.[1] It was patterned after and its provisions are almost identical to what is commonly known as Act 111[2] which governs collective bargaining between governmental bodies and police and fire personnel. Prior to Act 105, the parties in this case voluntarily met to discuss the terms and conditions of employment, but the Association and the School District of Philadelphia (District) have not had a collective bargaining agreement in place since 1985. When an impasse was reached between the Association and the District because they could not agree on the terms of a new collective bargaining agreement, a panel of arbitrators was appointed pursuant to Section 4(d) of Act 105 for interest arbitration among the parties.[3] Each party appointed its own arbitrator and agreed on a neutral member of the arbitration panel.[4]

The Association submitted to the arbitration panel proposals for a new collective bargaining agreement that included the terms of the entire collective bargaining agreement between the parties from 1982–1985, as well as a 1993–1995 memorandum of understanding between the parties that

---

1. Act 105 provides, in pertinent part:
   School administrators employed by a city of the first class shall, through labor organizations or other representatives designated by fifty per centum (50%) or more of such school administrators, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, and other benefits and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this section.

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

3. Section 4(d) of Act 105 provides:
   If in any case of a dispute between a public employer and its school administrator employees the collective bargaining process reaches an impasse and stalemate, with the result that employers and employees are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request an appointment of a board of arbitration. For purposes of this section an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty (30) days after the collective bargaining proceedings have been initiated.
   71 P.S. § 371(d).

4. *See* Section 4(e) of Act 105, 71 P.S. § 371(e).

was based mainly on the past practices of the parties that had evolved in the years since the last collective bargaining agreement.[5] Although the District did not submit any of its own issues in writing, it submitted oral counter-proposals in front of the arbitration panel to the issues identified where it disagreed with the position advanced by the Association. Thirteen hearings were held where the arbitration panel took testimony from both parties regarding the proposals and counter-proposals. From December 1997 to March 1998, the arbitration panel met in executive session, during which time the neutral arbitrator requested that each party's arbitrator exchange arbitration opinion and awards. Each party's appointed arbitrator submitted a proposed opinion and award to the neutral arbitrator who issued a final award, including an integrated collective bargaining agreement on May 13, 1998, which was signed by the District's arbitrator on May 14, 1998. The Association's arbitrator signed the agreement four days later but dissented to more than 30 provisions of the award and agreement.

The Association filed a petition for review with the trial court challenging the arbitration award, primarily on the grounds that the arbitration panel did not have jurisdiction to decide matters other than those submitted to the arbitrators in writing by the parties. The trial court, however, held that under the limited scope of review in interest arbitration proceedings, the arbitration panel's award should stand and that the position advanced by the Association would have the trial court merely re-write the arbitration award in accordance with the Association's proposals which would violate the trial court's narrow scope of review and frustrate the intent of the legislature in enacting Act 105. This appeal by the Association followed.

## I.

■ Initially, we note that there is some dispute as to whether the arbitration award is appealable at all because section 4(h) of Act 105 provides:

> The determination of the majority of the board of arbitrators thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the school adminis-

5. The following was submitted by the Association to the panel of arbitrators as the issues in dispute:

Teamsters 502 (CASA) proposes that the September 1, 1996 to August 31, 1999 Collective Bargaining Agreement be comprised as follows:
1. School Administrator–School District of Philadelphia Collective Bargaining Agreement of 1982–1985;
2. As amended by portions of the 1993–1995 Teamster–School District of Philadelphia Memorandum of Understanding;
3. As further amended by changing "will" to "shall" where appropriate;
4. As amended by gender neutral language;
5. As amended by increases in salary effective September 1, 1996 and each September First Thereafter;
6. As amended by increases in the Health and Welfare Fund payment effective September 1, 1996 and each September First thereafter;
7. As amended by increases in the Professional Growth Fund payments effective September 1, 1996 and each September First thereafter;
8. As amended by the creation of payments to provide a Legal Services Fund;
9. As amended by improvements in School District payments for Health Insurance;
10. As amended by proposals drafted by the Teamster 502 negotiating team and included herein;
11. As amended by the correction of dates;
12. As amended by portions of agreement(s) contained in collective bargaining agreements entered into by the School District of Philadelphia and other unions;
13. Including an Agency Shop (Fair Share) provision;
14. As amended by new demotion/furlough practices;
15. And to be applied to any new bargaining units not mentioned in prior agreements;
16. Association then attached the entire 1982–1985 collective bargaining agreement and 1992–1995 memorandum of understanding to its proposals.

trators involved. The determination shall be in writing, and a copy thereof shall be forwarded to both parties to the dispute. *No appeal therefrom shall be allowed to any court.* (Emphasis added.)

71 P.S. § 371(h). The Association contends that this language must be construed as imposing a "narrow certiorari" standard of review [6] that is used by our Supreme Court to review interest arbitration awards under Act 111 and which contains language identical to the language above in Act 105 that states no appeal shall be allowed in any court.

The District, on the other hand, argues that this language means precisely what it says and that the arbitration award is not appealable. It reasons that Act 105, unlike Act 111, was enacted after the Statutory Construction Act of 1972, which provides that "when the words of a statute are clear and free from all ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Because the plain language of Act 105 clearly states that no appeal is allowed, it contends that the arbitration panel's award is not appealable at all. It concedes, however, that if the award is appealable, the narrow certiorari scope of review is applicable here.

■ Notwithstanding the language in Section 4(h) of Act 105, we agree with the Association that the arbitration award is subject to judicial review. Initially, we point out that the School District's argu-

ment that the letter of the law should be followed because Act 105, unlike Act 111, was enacted after the Statutory Construction Act requirement, misperceives the reason that our Supreme Court in *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), found that Act 111 awards were appealable. In so holding, our Supreme Court recognized that if arbitration awards were not appealable, there would be no way to ensure that the proceedings before the arbitrator were conducted in accordance with the minimum requirements of procedural due process. An arbitrator could issue an award containing provisions not submitted to him or her for resolution, engage in irregular proceedings and/or violate constitutional rights of the parties with no one having any recourse. While our Supreme Court did state in *Washington* that the legislative mandate that no appeals be allowed from the interest arbitration award challenging the merits of the award did not violate due process, it noted that the arbitration panel was required to conduct its affairs in accordance with procedural due process. For that reason, our Supreme Court adopted the narrow certiorari scope of review in Act 111 interest arbitration proceedings to adequately protect the parties' constitutional rights. Similarly, to ensure the regularity of the proceedings and that the arbitrator's award is not illegal or unconstitutional, Act 105 awards are appealable under the narrow certiorari scope of review.[7]

---

**6.** Under the narrow certiorari scope of review, an appellate court's review of an interest arbitration award under Act 111 is limited to questions regarding (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995).

**7.** As to the District's argument that the result here should be different than in Act 111 cases because Act 105 was enacted after the enactment of the Statutory Construction Act, ignoring that the plain language rule interpretation

was the law long before the enactment of the Rules of Statutory Construction, 1 Pa.C.S. §§ 1501–1991, Section 1922(4) of the Statutory Construction Act of 1972 provides that when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language. 1 Pa.C.S. § 1922(4). The language in Section 4(h) of Act 105 that "no appeal therefrom shall be allowed to any court" should be given the same construction as the identical language found in Act 111, which our Supreme Court has stated means that the arbitration award will be reviewed under the narrow certiorari

## II.

■ As to the merits, the Association contends that a number of provisions of the award should be stricken because those matters were submitted to the arbitration panel either in writing by the District or were not communicated to the Association during the entire collective bargaining process for resolution.[8] While Section 4(d) of Act 105 does provide that a party requesting arbitration is required to give written notice to the other party containing specifications of the issue or issues in dispute, implying that those issues are the only matters that can be considered by the arbitration panel, the Association did not submit specific issues to the arbitration panel, but only broad proposals which essentially called into questions all the past practices of the parties, including those in the defunct 1985 Collective Bargaining Agreement.[9] In fact, the Association's counsel admitted as much before the arbitration panel. (See N.T. 692–693.)[10] Rather, the previous practices included in those proposals were subject to negotiation throughout the arbitration process, including those discussed and submitted before the arbitration panel.

Moreover, many of the matters the Association claims were not mentioned anywhere in the process were, in fact, discussed either through testimony before the arbitration panel or when *both parties,* without objection, submitted a proposed award and integrated collective bargaining agreement to the neutral arbitrator during the executive sessions. As such, the arbitration panel did not exceed its authority in making its award. *Township of Wilkins v. Wage and Policy Committee of the Wilkins Township Police Department,* 696 A.2d 917 (Pa.Cmwlth.1997).[11]

scope of review. *Washington, supra.* We also note that our Supreme Court in *Betancourt* stated that the legislature tacitly approved the use of the narrow certiorari scope of review in interest arbitration cases by amending Act 111 in 1974, two years after the enactment of the Statutory Construction Act of 1972, without modifying the scope of review. Moreover, although Rule 68½ upon which the Supreme Court based its authority for the narrow certiorari scope of review in *Washington* was repealed, the Supreme Court has continued to review interest arbitration awards under the narrow certiorari scope of review. *See Township of Moon v. Police Officers of Township of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985).

8. For example, the Association argues that they submitted to the arbitration panel a proposal seeking additional funds for the Health and Welfare Fund and the arbitrators used that request to reduce the number of trustees to the Fund from 11 to two without that specific issue having been submitted for arbitration. They also state that the specific issue of an increase in the number of working days from 185 to 190 was not brought up at any time during the proceedings and should be stricken.

9. The Association also contends that the arbitration panel did not have the authority to award any proposal favorable to the District because it was the only one to submit written issues to the arbitrators, and the District waived its right to have any proposals favorable to it contained in the award because it did not submit any issues in writing to the arbitrators. However, the arbitrator's authority is not limited to simply accepting or rejecting the proposals of the Association as he or she has the power to fashion an award in a fair manner within the total context of those proposals. *See Board of Supervisors of Butler Township v. Butler Township Police Department,* 153 Pa.Cmwlth. 306, 621 A.2d 1061 (1993).

10. The following exchange took place between the Association's counsel, Mr. Ryan, and Mr. Felix, the arbitrator appointed by the District:

Mr. Ryan: [T]here will be a collective bargaining agreement containing whatever this panel puts into it.
Mr. Felix: Right. But at this point we do not know what the panel is going to put in, so the one thing we would not want the Panel to do is assume that if they do not put it in the contract, the administrators have it as a protected right. It would not be a protected right if it's not in the contract.
Mr. Ryan: With that we agree. Okay.

11. We also note that every presumption is to be made in favor of the award. *In re Arbitration Award Between Lower Yoder Township Police and Lower Yoder Township,* 654 A.2d 651 (Pa.Cmwlth.1995).

## III.

■ Even if these matters were before the arbitration panel, the Association also contends that the arbitration panel's award abolishing service increments for administrators and instead including in the award a pay for performance plan upon which salaries are to be based was illegal and should be stricken.[12] It argues that provision of the award is illegal because the administrators are guaranteed pay increments pursuant to Section 1142 of the Public School Code of 1949 (School Code), making it illegal to eliminate those increments.[13] While Section 1142 of the School Code sets out service increments, it does so in the context of a state-mandated minimum salary commensurate with their years of experience in the school district (the highest salary anywhere on the scale is $16,350). Once the state minimums have been met, the provision has been satisfied and nothing in the provision prevents other means to be used to determine increases in salary, including an award that eliminates step increments and instead provides for a pay for performance plan under which school administrators and principals are to receive pay increases based on objective performance criteria. *See Wildrick v. Board of Directors of Sayre Area School District,* 491 Pa. 25, 417 A.2d 617 (1980).

■ Finally, the Association contends that because Section 10.11 of the arbitration award dealing with possible reductions in force is purportedly at variance with Section 1151 of the School Code,[14] it must be stricken as violative of rights guaranteed by the Pennsylvania and United States Constitution.[15] Its argument is that

12. Section 6.16 of the Award provides:

> The parties agree that the Board of Education shall establish performance standards, objectives and scales to be used for the purpose of determining performance based pay for administrators.
> Section 6.17(b) provides that after September 1, 1998, "the principals salary schedule shall not be defined by step increments" but rather that "all increases for principals shall be earned in accordance with the Performance Pay Plan."
> The Association also contends that the arbitration panel exceeded its authority by including the Performance Pay Plan in the award because under the plan, the arbitrators improperly delegated their decision making authority to another body (the District) in violation of their duty to grant a final and binding award. It argues that the arbitration panel gave the District "the unilateral right and the unilateral power to establish the pay plan, to implement it each year [and] to assign an administrator to any place within that range even during the school year." (Brief at 21.) The provision of the award pertaining to the Performance Pay Plan clearly indicates that "the Board [of Education] agrees to meet with [Association] and a representative number of principals and other bargaining unit members concerning the establishment of performance standards and objective prior to implementation by the Board." Arbitration award Section 6.16(a). In effect, what the arbitration panel did was to leave it to the parties to meet and discuss a plan and if one

could not be reached amicably, the District could implement it.

13. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1142. Section 1142 provides, in pertinent part:

> Except as hereinafter otherwise provided, all school districts and vocational school districts shall pay all ... supervisors ... and principals in the public schools of the district the minimum salaries and increments for the school year 1968–1969 and each school year thereafter.

14. Section 1151 provides, in pertinent part:

> [T]here shall be no demotion of any professional employee either in salary or in type of position, except as otherwise provided in this act, without the consent of the employee, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the school board of directors and an appeal in the same manner as hereinbefore provided in the case of a dismissal of a professional employee. 24 P.S. § 11–1151.

15. Section 10.11 of the award provides, in pertinent part:

> a. In the event that reductions in force become necessary, such reductions shall be accomplished within classifications on the basis of seniority....
> b. Any Administrator whose position is eliminated by a reduction in force shall be offered any lesser position for which he is

Section 1151 gives the administrators certain rights that are akin to a contract, and to take those rights away violates its constitutionally guaranteed contractual rights. We point out, however, that rights granted under a statute are not contractual in nature, vest no contractual rights in anyone, and no constitutional rights are implicated if they are changed or eliminated. *See Dodge v. Board of Education of City of Chicago*, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937) (an act fixing salaries, term or tenure of a public official does not create a contractual right in favor of the public official. "The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise.") In any event, Section 10.11 of the Agreement pertains to reductions in force in the event they become necessary and are to be accomplished "within classifications of seniority." This provision of the award effectively mirrors the language of Section 1125.1 of the School Code [16] dealing with the suspension of professional employees in the event of consolidation or realign-

ment of the public schools. Nothing in Section 10.11 of the arbitration award either mandates demotions or reductions in force or precludes an administrator who is demoted either in pay or position from exercising his or her rights to a hearing under Section 1151 of the School Code, making the Association's argument without merit either constitutionally or factually.

Accordingly, the order of the trial court affirming the arbitration award is affirmed.

## *O R D E R*

AND NOW, this 19th day of November, 1999, the order of the Court of Common Pleas of Philadelphia County, Civil Division, at June Term 1998, No. 1639, dated October 14, 1998, is affirmed.

---

qualified with the [Association's] bargaining unit....

(1) If there are no comparable vacant positions for which such an Administrator is qualified, he shall be given the opportunity to apply for any other vacant position for which he is qualified within the School District.

**16.** Added by Act of November 20, 1979, P.L. 465, *as amended*, 24 P.S. § 11–1125.1. Section 1125.1 provides in pertinent part:

Professional employees shall be suspended ... in inverse order of seniority within the school entity of current employment....

\* \* \*

(c) A school entity shall realign its professional staff so as to insure that more senior employees are provided with the opportunity to fill positions for which they are certified and which are being filled by less senior employees.