**The CITY OF PHILADELPHIA; John F. Street, Petitioners**

v.

**Mark SCHWEIKER; the Philadelphia Parking Authority; Joseph T. Ashdale; Michael A. Cibik; Catherine Marshall; Alfred W. Taubenberger; Russell R. Wagner; Karen M. Wrigley, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.

Decided Feb. 11, 2003.

Nelson A. Diaz and Paul R. Rosen, Philadelphia, for petitioners.

Alfred W. Putnam, Philadelphia, for respondents.

Susan J. Forney, Harrisburg, for respondent, Office of Atty. Gen.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.

OPINION BY Judge McGINLEY.

Before this Court, in our original jurisdiction, are the preliminary objections of Governor Mark Schweiker (Governor) and the Philadelphia Parking Authority together with new appointees; Joseph T. Ashdale, Michael A. Cibik, Catherine Marshall, Alfred W. Taubenberger, Russell R. Wagner, and Karen M. Wrigley (collectively, Authority) to the amended complaint[1] filed by the City of Philadelphia (City) together with the Mayor of Philadelphia, John F. Street (Mayor). This Court sustains the preliminary objections.

On June 5, 1947, the General Assembly enacted the Parking Authority Law[2] (Law). Section 4(a) of the Law, 53 P.S. § 344(a), provides that "[w]henever the council of any city … shall desire to organize an Authority … it shall adopt a resolution or ordinance signifying their intention to do so." The Law also authorized parking authorities to issue bonds that were excluded from the City's debt limits.

The Authority was created in 1950, when the City enacted an ordinance that authorized the Mayor to apply for articles of incorporation for a parking authority.

Initially, the Authority operated off-street parking garages. In 1982, the General Assembly amended the Law and expanded the operational purposes of an authority. Under the amendments, a city may delegate municipal functions to a parking authority and authorize it to act as the municipality's agent in handling on-street parking responsibilities. In 1983, the Mayor approved an ordinance which authorized the Authority to assume much of the City's on-street parking responsibilities. The City and the Authority entered into an agreement of cooperation whereby the Authority administered the City's on-street parking functions.

The Authority operates off-street parking facilities on behalf of the City pursuant to leases between the Authority and the City. The Authority pays rent to the City in the amount of $21,500,000 per year. The largest rent payments come from the Authority's lease of parking facilities at the Philadelphia International Airport. The Authority has also issued several series of bonds to finance its projects.

In June 2001, the General Assembly passed Senate Bill 780 which was signed into law as Act 22 of 2001. When the bill reached the Pennsylvania House of Representatives an amendment was introduced that codified the Law and altered it. Now, the Governor, rather than the Mayor, is authorized to appoint members of

---

1. The City originally brought this action in the Court of Common Pleas of Philadelphia County (common pleas court) against the Authority and its new appointees. The common pleas court determined it lacked jurisdiction and transferred the matter to this Court. On July 20, 2001, this Court dismissed the matter for lack of jurisdiction. The City sought an emergency stay and petitioned our Pennsylvania Supreme Court to exercise original jurisdiction pursuant to its King's Bench powers. On August 1, 2001, the Supreme Court denied the application for a stay and declined to exercise original jurisdiction. In May 2002, the Su-

preme Court vacated this Court's previous order and remanded the matter to this Court for consideration on the merits. On July 10, 2002, the City filed an amended complaint that added the Mayor as a plaintiff and the Governor as a defendant. The allegations in the original complaint against the Authority are substantially similar to those in the amended complaint.

2. Act of June 5, 1947, P.L. 458, 53 P.S. §§ 341–356, repealed by Act of June 19, 2001, P.L. 287, No. 22, § 3.

the Authority. *See* 53 Pa.C.S. § 5508.1(e).[3] Secondly, the Authority is required to immediately transfer up to $45,000,000 of its retained earnings to the Philadelphia School District (District), and to do so each year thereafter, based on the availability of earnings. 53 Pa.C.S. § 5508.1(q).[4]

In the amended complaint, the City and Mayor allege that the Commonwealth reneged on a promise that the City would retain control of the Authority. The City requests a declaration that Section 5508.1 of Act 22 is unlawful. In addition, the City attempts to permanently enjoin the application of any provision of Section 5508.1, including the seating of new members of the Authority.

In Count I, the City and Mayor allege:

83. The Take–Over Law, by transferring control of the Philadelphia Parking Authority to the Commonwealth and the Governor conflicts with the Pennsylvania Constitution, the Home Rule Charter, and ordinances of the City Council of Philadelphia, has encroached on the City's police power and authority to address matters of purely local concern, has interfered with the Mayor's powers, and has given the Commonwealth control over a municipal function it has no right . . . to exercise . . . .

In Count II, the City and Mayor allege:

89. Section 13 of the Parking Authority Law . . . stated that "[t]he Commonwealth does hereby pledge to and agree with any person, firm . . . acquiring the bonds to be issued by the Authority for the construction . . . of any project . . . that the Commonwealth will not limit . . . the rights hereby vested in the Authority until all bonds . . . are fully met and discharged." ·

90. The City . . . is a beneficiary of the statutory pledge contained in Section 13 of the Parking Authority Law.

. . . .

92. Implementing the Take–Over Law . . . would breach that statutory pledge

. . . .

In Count III, the City and Mayor allege:

97. Section 12 of the Parking Authority Law . . . stated that "the Authority shall not be authorized to do anything that will impair the security of the holders of obligations of the Authority . . . ."

---

3. The 2001 amendments changed the Law as follows. Section 5508.1(e) of Act 22 provides:

   **(e) Appointment.—**
   (1) The Governor shall appoint six additional members of the board.
   (2) Gubernatorial appointments shall be made as follows: two upon the Governor's own discretion, two from a list of at least three nominees prepared and submitted to the Governor by the President pro tempore of the Senate and two from a list of at least three nominees prepared and submitted to the Governor by the Speaker of the House of Representatives.
   (3) The Governor shall select members from the lists provided . . . .
   (4) In the event that the Governor fails to select a member from an original list of nominees within 30 days of the receipt of the list . . . the legislative presiding officer who prepared the list may appoint members to serve on the board.
   53 Pa.C.S. § 5508.1(e)(1)–(4).

4. Pursuant to Section 5508.1(q) of Act 22:

   **(q) Funding.—**
   During its fiscal year beginning in 2001, the authority shall transfer to the general fund of a school district of the first class coterminous with the parent municipality that portion of its retained earnings, not to exceed $45,000,000, which will not jeopardize the authority's ability to meet debt service payments or to retire outstanding bonds. In subsequent years the board shall transfer the maximum amount it deems available for such purpose.
   53 Pa.C.S. § 5508.1(q).

98. The City ... is a beneficiary of the statutory pledge contained in Section 12 of the Parking Authority Law.

. . . .

100. Implementing the Take–Over Law ... would cause ... breach in that statutory pledge . . . .

In Count IV, the City and Mayor allege that "[i]mplementing the Take–Over Law ... would cause harm to the City in that it would be forced to carry on a relationship with a newly formed Philadelphia Parking Authority no longer under its control."

In Count V, the City and Mayor allege:

112. The Pennsylvania Constitution, Article I, Section 17, prohibits the passage of any law impairing the obligation of contracts.

. . . .

114. The City of Philadelphia relied on the statutory pledge in entering into several contracts with the Philadelphia Parking Authority . . . .

115. Implementing the Take–Over Law ... would impair these contracts . . . .

In Count VI, the City and Mayor allege:

120. The Pennsylvania Constitution, Article III, Section 32, prohibits the General Assembly from passing any special or local laws.

121. The Take–Over Law, by singling out the City ... for special treatment, is a special or local law.

. . . .

124. The Take–Over Law violates Pennsylvania constitutional law prohibiting the passage of special or local laws.

In Count VII, the City and Mayor allege:

128. The Pennsylvania Constitution, Article III, Section 7, prohibits the passage of any local or special bill unless notice of the intention to pass such a bill has been published in the affected locali-

ty thirty days prior to introduction of such a bill into the General Assembly.

. . . .

130. No notice ... of the intention to pass the Take–Over Law was published in Philadelphia.

131. The Take–Over Law violates Pennsylvania constitutional prohibitions against the passage of local or special bills without notice.

In Count VIII, the City and Mayor allege:

135. The Pennsylvania Constitution, Article III, Section 31, prohibits the General Assembly from delegating to any special commission ... any power to make ... any municipal improvement ... or to levy taxes or perform any municipal function whatever.

136. The Take–Over Law, by taking control of the Philadelphia Parking Authority away from the people of the City of Philadelphia, has effected an improper delegation of municipal power to a body not lawfully entitled to exercise such power.

In Count IX, the City and Mayor allege:

142. The Pennsylvania Constitution, Article III, Section 3, prohibits the passage of any bill containing more than one subject.

143. The Take–Over Law was enacted as part of a bill that contained more than one subject in that it addressed both municipal authorities and parking authorities.

144. The Take–Over Law violates Pennsylvania constitutional prohibitions against the passage of bills containing more than one subject.

Amended Complaint, July 8, 2002, paragraphs 83, 89, 90, 92, 97, 98, 100, 107, 112, 114, 115, 120, 121, 124, 128, 130, 131, 135, 136, & 142–144 at 21–26 & 28–36.

The Governor preliminarily objects and asserts:

1) Count I fails to state a cause of action based on Home Rule.

2) Counts II through IV fail to state a cause of action based on "statutory pledges" in the Law.

3) Count V fails to state a cause of action regarding the alleged unconstitutional impairment of a contract.

4) Counts VI and VII fail to state a cause of action based on the alleged enactment of a special law.

5) Count VIII fails to state a cause of action for the alleged improper delegation of municipal functions to a special commission.

6) Count IX fails to state a cause of action on the basis that the bill that enacted Act 22 allegedly contained more than one subject.

The Authority advances further objections and asserts that the City lacks standing and also that each count of the amended complaint fails to state a claim upon which relief may be granted.[5]

## A. STANDING

■ The Authority first contends[6] that despite the Mayor's standing, the City must be dismissed because it lacks standing to bring this action. With respect to the criteria for standing, a litigant's interest must be substantial, direct, and immediate. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

In *City of Pittsburgh v. Commonwealth*, 112 Pa.Cmwlth. 188, 535 A.2d 680 (1987), the City of Pittsburgh challenged the constitutionality of Section 14 of the Local Tax Enabling Act[7] and Section 302(a)(7) of the Home Rule Charter and Optional Plans Law.[8] It was alleged that the citizens of Pittsburgh were disadvantaged by discriminatory provisions in the statutes. Nevertheless, "[t]his Court has held that inasmuch as a municipality is merely a creature of the sovereign created for the purpose of carrying out local government functions, the municipality has no standing to assert the claims of its citizens against the Commonwealth." *Id.* at 682 (citation omitted).

■ Here, as in *City of Pittsburgh*, the City has not described or established a discernible adverse impact upon some interest. Even if the City's allegations are accepted as true, such challenges are insufficient at law. The City summarily and baldly concludes that the amendments to the Law constitute "an aggressive intrusion on local self-determination." Amended Complaint, paragraph 6 at 3. Further, the amended complaint alleges the Authority's transfer of retained earnings to the District creates risks for the Authority

---

**5.** The Authority's preliminary objections were substantially similar to the preliminary objections raised by the Governor. There are some instances where the Governor and Authority advanced different rationale in support of a preliminary objection, but the distinctions are more of form than substance other than the Authority's objection to standing.

**6.** In *Ruby v. Department of Transportation*, 158 Pa.Cmwlth. 631, 632 A.2d 635 (1993), this Court stated that "[w]hen reviewing preliminary objections in the nature of a demur-

rer we consider as true all well-pleaded facts which are material and relevant. Preliminary objections shall be sustained only when they are clear and free from doubt and the law will not permit recovery." *Id.* at 636 (citations omitted).

**7.** Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6914.

**8.** Act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. § 1–302(a)(7).

which reserved such funds for other purposes. *See* Amended Complaint, paragraph 72 at 19. Overall, the City's abstract allegations of remote concerns do not satisfy the requirements for standing.[9] For all of the foregoing reasons, this Court agrees with the Authority that the City lacks standing. Therefore, this preliminary objection is sustained and the City is removed as a party to the amended complaint.[10]

## B. HOME RULE

■ The Governor and the Authority assert that the amendments to the Law do not violate the Home Rule Doctrine. Facially from the complaint, it is clear the Home Rule Doctrine does not apply because the Authority is not an agency of municipal government but an agency of the Commonwealth. *See* 53 Pa.C.S. § 5505(a)(1) & (3).

In *Herriman v. Carducci*, 475 Pa. 359, 380 A.2d 761 (1977), the Supreme Court stated that "[a]n authority under the Urban Redevelopment Law is an agent of the Commonwealth and not of the local government body." *Id.* at 363, 380 A.2d at 763 (citation omitted). Also, the city council may not circumvent the statutory guidelines governing redevelopment authorities. *Id.* at 365, 380 A.2d at 764.

Additionally, "Article 9, Section 2 of the Pennsylvania Constitution provides that municipalities have the right to adopt home rule charters, *but that their authority is limited* by the Constitution and by the acts of the General Assembly." *Ortiz v. Commonwealth*, 655 A.2d 194, 197 (Pa. Cmwlth.1995) (emphasis added). Here, home rule principles and City ordinances do not prohibit legislative amendments, certainly where a state Authority is involved. This Court sustains the preliminary objection to Count I of the amended complaint.

## C. REPEALED LAW

■ Here, the Governor specifically submits that the legislature is not bound by previously enacted "statutory pledges." This Court agrees that the Mayor's claim that the amendments contravene previously enacted law is fatally flawed.

■ In *Commonwealth Association of School Administrators v. Board of Education, School District of Philadelphia*, 740 A.2d 1225 (Pa.Cmwlth.1999), this Court noted "that rights granted under a statute are not contractual in nature … and no constitutional rights are implicated if they are changed or eliminated." *Id.* at 1231 (citation omitted). This Court must agree that the General Assembly unquestionably has the authority to revise the Authority's method of appointment. The legislature is cloaked with the authority to modify and repeal prior enactments. *Blackwell v. Commonwealth, State Ethics Commission*, 523 Pa. 347, 567 A.2d 630 (1989).

It is acknowledged that Sections 12 and 13 of the Law, as noted in Counts II through IV, gave protection to bondhold-

---

**9.** *William Penn Parking Garage, Inc.* is distinguishable in that the individual plaintiffs were aggrieved by the ordinance which imposed a tax on patrons of non-residential parking spaces. These individuals had standing. Given the close causal connection between the tax and the injury to parking operators, they also had standing.

**10.** This Court must address the remaining preliminary objections of the Authority and the Governor pertaining to the Mayor's complaint. The remaining preliminary objections are substantially identical pertaining to the City's complaint. Assuming arguendo, that the City does have standing, this Court would reach the same conclusions regarding the City's complaint as to the Mayor's complaint.

ers. Moreover, the appointment of Authority members by the Governor does not impair the security of bondholders.[11] Therefore, the preliminary objection to Counts II through IV is sustained.

### D. CONSTITUTIONAL CHALLENGES

#### 1. Impairment of Contracts

Next, the Governor maintains that the amendments do not unconstitutionally impair the contracts entered into by the City. It must be emphasized that the amended complaint does not specify or explain how any of the obligations were altered.[12] This Court agrees there is a lack of specificity in Count V.

■ It is not alleged that the obligations under the contracts have increased or decreased. Instead, the amended complaint focuses on the "manner by which the governing body of the Philadelphia Parking Authority is selected" and "the guarantee that the City of Philadelphia would control the selection . . . ." Amended Complaint, paragraph 115 at 30. An erroneous assumption arises from the amended complaint that there is a contractual right to the method and manner of appointment and the procedural organization of the Authority. Statutes of this nature do not vest contractual rights. *See Commonwealth Association of School Administrators*, 740 A.2d at 1231. This Court sustains the preliminary objection to Count V.

#### 2. Special Laws

■ The Governor and the Authority contend that the amendments are not "special laws" prohibited by Article III, Section 32 of the Pennsylvania Constitution. The test is whether the distinction drawn by the legislation bears a reasonable relation to the legislative purpose. *See DeFazio v. Civil Service Commission*, 562 Pa. 431, 756 A.2d 1103 (2000).[13] Here, the Authority's transfer of retained earnings to the District is reasonably related to the legislature's interest in adequate funding for the District.

Further, the District is the only school district in the Commonwealth that lacks authority to directly levy taxes. *See Danson v. Casey*, 484 Pa. 415, 422, 399 A.2d 360, 364 (1979). Therefore, the General Assembly properly limited the amendment to a school district located within a city of the first class, whereas school districts in other municipalities are authorized to tax directly. The preliminary objection to Counts VI and VII is sustained.

#### 3. Municipal Delegation to Special Commission

■ Additionally, the Governor and the Authority assert that the amendments do not delegate municipal functions to a special commission in violation of Article III, Section 31 of the Constitution. The Authority is not a "special commission," as designated by the Constitution. It fits neatly within the statutory category of a "public body corporate and politic, exercising public powers of the Commonwealth as

---

**11.** The Authority seeks the dismissal of Counts II through V because the amendments do not violate any pledge by the Commonwealth. Even if the legislature did renege on a promise, which this Court does not accept, the cause of action would accrue not to the Mayor, but to potential bondholders. Also, the Mayor does not allege he was an intended beneficiary of the pledges.

**12.** Additionally, the Authority asserts the Mayor does not allege he contracted with the Authority, much less that those contracts were impaired.

**13.** *DeFazio* is cited only for its reference to the reasonable relationship test.

an agency of the Commonwealth." 53 Pa. C.S. § 5505(a)(1).

In *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A.2d 528 (1973), the Supreme Court determined that "the Pennsylvania Housing Finance Agency is a 'body corporate and politic ... created as a public corporation and government instrumentality....'" *Id.* at 340, 309 A.2d at 534 (citation omitted). This analysis led to the conclusion that the agency was not a special commission. *Id.* at 340, 309 A.2d at 534.

Under the present circumstances, "[t]he authority shall have no power to pledge the credit or taxing power of the Commonwealth...." 53 Pa.C.S. § 5505(e)(1). The amended complaint fails to demonstrate a delegation of municipal authority to a special commission. This Court sustains the preliminary objection to Count VIII.

### 4. *Single Subject*

Lastly, the Governor and the Authority submit that the amendments comply with the "single subject rule" set forth in Article III, Section 3 of the Constitution. According to the Mayor, the amendments are unconstitutional because they deal with two subjects, municipal authorities and parking authorities.

■ However, these subjects are inextricably intertwined. In *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa. Cmwlth. 465, 583 A.2d 844, 848 (1990), this Court stated that "Act 6 contains amendments to the Crimes Code, Judicial Code, and Vehicle Code, and we note that these amendments are all related to the single

purpose of restructuring the regulation of motor vehicle insurance ...." Here, the amendments address one cohesive topic, i.e. authorities that benefit municipalities. In sum, the preliminary objection to Count IX is sustained.

Accordingly, we sustain all preliminary objections and dismiss the amended complaint.

### ORDER

AND NOW, this 11th day of February, 2003, the Philadelphia Parking Authority's preliminary objection to the City of Philadelphia's lack of standing is sustained. The Authority and the Governor's remaining preliminary objections to the Mayor's amended complaint are also sustained. Lastly, the amended complaint is dismissed.

Judge COHN did not participate in the decision in this case.

Dissenting opinion by Judge SMITH–RIBNER in which President Judge COLINS joined.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the decision of the majority to sustain the preliminary objections in the nature of a demurrer filed by Respondents to the amended complaint of the City of Philadelphia and the Mayor of Philadelphia. Petitioners seek a declaration from this Court that 53 Pa.C.S. § 5508.1, enacted by Section 1 of Act 22 of 2001, is unlawful and null and void.[1] Peti-

---

1. Specifically, Section 5508.1 provides that the Governor of Pennsylvania shall appoint six new members to the Philadelphia Parking Authority's governing board and that the Mayor of Philadelphia may not appoint any new members to the Parking Authority's board. However, the Mayor's original ap-

pointments to the Parking Authority's board may serve out their respective current terms. Also during its fiscal year 2001, the Parking Authority shall transfer to the general fund of the Philadelphia School District that portion of the Authority's retained earnings, not to exceed $45,000,000 and which will not jeop-

tioners further request a declaration that the manner of selecting the governing body of the Philadelphia Parking Authority and the Authority's purpose may not be lawfully changed until all outstanding Authority bonds have been fully satisfied and discharged in accordance with the statutory pledge made by the legislature when it enacted the former Parking Authority Law (Law), Act of June 5, 1947, P.L. 458, *as amended,* 53 P.S. §§ 341–356,[2] now codified at 53 Pa.C.S. §§ 5501–5517.

## I

In ruling on preliminary objections courts must decide whether the law says with certainty that, based on the factual averments, no relief is possible. *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa.Cmwlth.1996). Any doubts must be resolved in favor of the non-moving party by refusing to sustain the preliminary objections. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995). This case should be no different as it is obvious that the law does not say with certainty that no relief is possible. In addition, averments in the amended complaint raise facts that, if proved, may sufficiently establish a right to relief, and this Court therefore should not dispose of the merits without a proper record in this case. *See Pennsylvania AFL–CIO v. Commonwealth,* 563 Pa. 108, 757 A.2d 917 (2000).

I first part with the majority in its ruling that the City does not have standing to file this action because the City "has not described or established a discernible adverse impact upon some interest." Slip op. at 9. This statement is utterly unsupported by a fair reading of the amended complaint or a careful reading of settled case law. In *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), the Pennsylvania Supreme Court ruled that a party may establish standing to challenge governmental action by showing a substantial, direct and immediate interest in the subject matter under litigation. The court indicated that to show standing a party must demonstrate a discernible adverse effect to some interest other than an abstract interest common to all citizens, harm caused by the challenged action and a causal connection between the complained of action and injury to the plaintiff.

I agree with the City that its position is indisguishable from that of the municipality in *Township of South Fayette v. Commonwealth of Pennsylvania,* 73 Pa. Cmwlth. 495, 459 A.2d 41 (1983), and of the school district in *Harrisburg School District v. Hickok,* 762 A.2d 398 (Pa.Cmwlth. 2000), where this Court readily conferred standing upon the governmental entities to bring their actions. In *Township of South Fayette* former President Judge Craig, writing for the majority, overruled the Commonwealth's preliminary objection on

---

ardize the Authority's ability to meet its debt service payments or to retire outstanding bonds. The result of Act 22 is to transfer control of the Parking Authority board from the Mayor to the Governor, and Counsel indicated at argument in this matter that, although not of record, there has been no transfer of $45,000,000 in Parking Authority earnings to the School District.

**2.** *See* Section 13 of the Law, 53 P.S. § 353, which provided in part: "The Commonwealth

does hereby pledge to and agree with any person, firm or corporation, or Federal agency subscribing to, or acquiring the bonds to be issued by the Authority for the construction, extension, improvement, or enlargement of any project or part thereof, that the Commonwealth will not limit or alter the rights hereby vested in the Authority until all bonds at any time issued, together with the interest thereon, are fully met and discharged."

standing and held that the township could bring its mandamus action against named state officials to compel them to act with respect to statutory reporting requirements on foreign fire insurance companies. Judge Craig reasoned that the township was not generally suing as fiduciary of the public interest but instead was suing because of its specific statutory responsibilities to offer fire protection to township residents.

In *Harrisburg School District* the school district challenged the constitutionality of certain legislation, regarding educational reform of the school district, which authorized the secretary of education to seize control of the school district and to transfer control to a board of control. The Commonwealth objected to the school district's standing to bring the action contending that school districts possessed only those powers granted by the legislature, and as creations of the state they could not challenge the state's actions. Citing *DeFazio v. Civil Service Commission of Allegheny County*, 562 Pa. 431, 756 A.2d 1103 (2000), Judge Pelligrini, writing for the majority, overruled the Commonwealth's preliminary objection and held that the school district was adversely affected because, other than levying taxes, its affairs in operating the school district had been taken away. Therefore, its interests in the outcome of the litigation were substantial, direct and immediate.[3] *See also Township of Upper Merion v. State Horse Racing Commission*, 145 Pa.Cmwlth. 82, 602 A.2d 459 (1992) (Judge Colins, writing for the majority, held that the township had standing to challenge a commission order that approved a nonprimary location for pari-mutuel wagering because the township's standing was based on its right to regulate parking and promote safety and protection of the public as opposed to some interest common to all citizens).

The City pleaded in its amended complaint that the challenged legislation posed a threat to the City's right to govern itself under the Philadelphia Home Rule Charter and the Pennsylvania Constitution due to changes made to the manner in which the City manages its municipal functions in connection with on and off-street parking regulation and carrying out of state-induced contractual arrangements between the City and its Parking Authority. *See* Count I. The City pleaded that it lent its credit to guarantee that holders of Parking Authority bonds will be paid and that this contractual arrangement was made in reliance upon the statutory pledge. Also Act 22 poses a threat to the City's affairs because of changes made to Parking Authority management, which will alter activities regarding on and off-street parking and long-term lease arrangements. The City further averred that it entered into various other contracts with the Parking Authority allowing it to act as agent for the City to carry out local parking functions, that the contracts were entered into based on the statutory pledge and that Act

---

3. In *Franklin Township v. Department of Environmental Resources*, 500 Pa. 1, 452 A.2d 718 (1982), the Supreme Court reversed this Court's decision to affirm the dismissal of an appeal based on lack of standing by the County of Fayette and Franklin Township. The Supreme Court held that pursuant to *Wm. Penn Parking Garage* the county and the township as legal persons are more than abstract entities, and in their role of promoting and protecting the quality of life for their residents they had a substantial, direct and immediate interest in the state government's action to permit the establishment of a toxic waste landfill within their boundaries. *Also see Borough of Glendon v. Department of Environmental Resources*, 145 Pa.Cmwlth. 238, 603 A.2d 226 (1992) (standing conferred upon the borough to challenge solid waste permit because of increased threat of municipal contamination).

22 represents a breach of that pledge. *See* Counts II, III, IV and V.

The City additionally averred that the legislature changed the purpose of the Law and unlawfully diverted funds collected by the Parking Authority, including revenue from airport parking designated for airport purposes, to the Philadelphia School District. In this connection, the City pleaded that it is required under federal law to allocate all funds received from airport facilities into a fund for airport use and that if such funds are expended for other purposes, the federal government could force the City to repay the funds improperly diverted and impose other sanctions. These averments, among others, show that the City's challenge is based on the right to perform its municipal functions, as a home rule municipality, rather than a challenge based on some abstract interest common to all citizens. The City's interests are substantial, direct and immediate, and it clearly meets the standards for standing articulated in *Wm. Penn Parking Garage*.

## II

Next, I dissent from the majority's decision to sustain preliminary objections to Count I of the amended complaint (violation of Home Rule powers), Counts II, III and IV (violation of legislative pledge that no rights vested in a parking authority created by local ordinance shall be limited or altered until all bonds are fully met and discharged) and Count V (impairment of contracts in violation of the Pennsylvania Constitution's Contract Clause, Article I, § 17). The City's action is one for declaratory judgment, and under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–

7541, a litigant has the right to obtain a declaration from the courts when the litigant's rights, status or other legal relations are affected by a statute. Instead of providing that declaration, the majority sustains objections to the City's impairment-of-contracts count by finding that this count, included in the 146–paragraph amended complaint, lacked specificity.

The City pleaded, inter alia, that it entered into (1) an Agreement of Cooperation with the Parking Authority for it to act as an agent for the City in carrying out local parking functions; (2) long-term lease agreements with the Parking Authority, described as leases to operate parking garages and surface lots in Center City Philadelphia and at the Philadelphia International Airport; and (3) many contracts with the Parking Authority to ensure that its bondholders will be paid in the event the Authority cannot meet its debt service obligations.[4] The City also pleaded that these contracts would be impaired and averred in what manner they would be impaired. A cursory review of the amended complaint discloses that the impairment-of-contracts count specifically pleads a cause of action.

Regarding the home rule and statutory pledge violations that the City averred, the majority simply holds that the authority of home rule municipalities may be limited by the Pennsylvania Constitution or by legislative acts and that even if the legislature reneged on its promise the cause of action would accrue only to potential bondholders. The majority's abbreviated analysis of these issues fails to sufficiently establish with certainty that the law will permit no recovery under the facts pleaded. The majority ignores the City's averments that

---

**4.** The City noted in its brief, *see* n. 14, that the contracts between the City and the Parking Authority were too numerous to list and to attach to the amended complaint, nor was the

City required to do so as the contracts are evidentiary and do not form the basis of the cause of action. *See* 4 Standard Pennsylvania Practice 2d, §§ 21:81, 82 (2001).

its municipal function of regulating parking within its borders has been taken away in violation of Article IX of the Pennsylvania Constitution. Parking is a purely local function under *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 207 A.2d 864 (1965), but this function in Philadelphia will now devolve upon a state-controlled entity. The majority also loses sight of the fact that the City guaranteed by contract the payment of Parking Authority bonds in the event of its default and that this guarantee was based upon the legislature's promise that it would not alter or limit the rights vested in the Parking Authority until all of its bonds were fully satisfied and discharged. The City has averred that as guarantor of those bonds, its contractual rights have been impacted and have been directly and substantially impaired.

In his memorandum opinion and order following hearing on the City's motion for preliminary injunction, former President Judge Doyle noted that the City's allegations did not entirely lack merit and that the myriad of cases before the courts involving special legislation and home rule indicate that the law is far from clear at the present time. *City of Philadelphia v. Philadelphia Parking Authority* (Pa. Cmwlth., No. 343 M.D.2001, filed July 20, 2001). I agree that the law does not say with certainty that no relief is possible under the facts pleaded, and consistent with the required liberal construction of the Declaratory Judgments Act and with principles of fundamental fairness, this Court at a minimum ought to grant the City's request for an evidentiary hearing to allow the City an opportunity to present evidence to sufficiently establish its entitlement to relief.

The City proposes to offer evidence, among other things, with regard to its guarantee of bonds issued by the Parking Authority and the risks that it now faces to City finances, its historical performance of local parking functions, its local parking legislation, its complex contractual relationships with the Parking Authority and the impact upon City operations due to the City's reliance upon the statutory pledge. I note persuasive authority in *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), which the City relied on to support its argument that the legislature does not have an absolute right to ignore statutory pledges at whim. The United States Supreme Court held in that case that the state of New Jersey was bound by a 1962 statutory pledge that it made, which expressed a clear intent on the part of New Jersey that it would not alter powers and rights of the port authority while the port authority's bonds were outstanding. The port authority was created in 1921 pursuant to a bi-state compact to coordinate transportation and other commerce facilities in and through the port of New York, and the authority was given the power to pledge its revenue to guarantee the payment of its bonds.[5] The

---

**5.** The New Jersey statutory covenant provided in part:

> The 2 states covenant and agree with each other and with the holders of any affected bonds ... that so long as any of such [Port Authority] bonds remain outstanding and unpaid and the holders thereof shall not have given their consent ... (b) neither the States nor the port authority nor any subsidiary corporation ... will apply

any of the rentals, tolls, fares, fees, charges, revenues or reserves, which have been or shall be pledged in whole or in part as security for such bonds, for any railroad purposes whatsoever other than permitted purposes hereinafter set forth.

N.J.S.A. § 32:1–35.55. The statutory covenant further promised that New Jersey would not impair the port authority's control over its fees or services.

bonds were not guaranteed by any state or city.

While recognizing the power of the state to repeal or modify its legislation at any time, the Supreme Court considered New Jersey's statutory pledge to be a contractual obligation and thus binding on the state. The Court held that as a consequence of New Jersey's outright 1973 repeal of its 1962 statutory covenant New Jersey impaired the obligation of the contract in violation of the Contract Clause of the United States Constitution, Article I, § 10 (no state shall pass any law impairing the obligation of contracts). The Court noted that New Jersey made no effort to modify or replace its statutory covenant with a comparable provision. Thus I dissent from the majority's decision to sustain Respondents' preliminary objections to Counts I, II, III, IV and V of the amended complaint and to dismiss the City's declaratory action.

President Judge COLINS joins in this dissent.